Patrick Donald KANE, Appellant,

v.

UNITED STATES of America,
Appellee.

Dale Glennon WILSON, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 19747, 19736.

United States Court of Appeals,
Eighth Circuit.

Aug. 26, 1970.

Daniel V. O'Brien, St. Louis, Mo., for appellant Kane.

Bernard J. Mellman, St. Louis, Mo., for appellant Wilson.

Robert B. Schneider, Asst. U.S. Atty., St. Louis, Mo., for appellee; Daniel

Bartlett, Jr., U. S. Atty., St. Louis, Mo., on the brief.

Before MATTHES, Chief Judge, JOHNSEN, Senior Circuit Judge, and GIBSON, Circuit Judge.

MATTHES, Chief Judge.

Appellants were prosecuted under Count I of a 4-count indictment, were tried, found guilty, and have appealed from the judgments of conviction entered upon the jury verdicts. Count I charged that the appellants did on or about November 20, 1968, by force, violence and intimidation take $55,000, more or less, belonging to the First State Bank of St. Charles, Missouri, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and that appellants in committing the robbery did assault an employee of the bank and did put his life in jeopardy by the use of dangerous weapons, in violation of 18 U.S.C. § 2113(a) and (d).[1]

The district court, Honorable Roy W. Harper, sentenced appellant Kane to 20 years imprisonment, to be served consecutively to the term of 22½ years imposed upon him on March 4, 1968, for bank robbery. Wilson was sentenced to 20 years imprisonment, to be served consecutively to a term of 12 years imposed upon him on June 29, 1967, for kidnapping, and to a term of life imprisonment imposed upon him for murder.

Since there is no question raised as to the commission of the offense as charged, a review of the facts is unnecessary. It is sufficient to observe that the uncontradicted evidence of the Government (appellants offered none) shows conclusively that appellants, by use of firearms, threatened and intimidated employees and customers of the St. Charles, Missouri bank and by force robbed the bank of approximately $55,-000.

---

1. Count II charged appellant Kane with escaping from the custody of a United States Deputy Marshal on November 14, 1968, in violation of 18 U.S.C. § 751(a). Count III charged appellant Wilson with the identical offense. Count IV charged appellants with making an assault with a dangerous weapon upon a United States Deputy Marshal in violation of 18 U.S.C. §§ 111 and 1114. Upon motion, Counts II, III and IV were severed.

Appellants jointly, through court appointed able lawyers assert on appeal that they were denied a fair trial by reason of prejudicial error specified as follows: (1) denial of motion to strike testimony of a Government witness for failure of the United States Attorney to produce to the court or to the defense a statement allegedly given by the witness as required by 18 U.S.C. § 3500, commonly referred to as the Jencks Act; (2) the use of hearsay evidence to establish an essential element of the charge, to wit, that the deposits of the bank were insured by the Federal Deposit Insurance Corporation; (3) failure of the court to give proper instructions to the jury on credibility of witnesses. Appellant Wilson alone complains of (1) denial of motion to dismiss indictment because the Government failed to record the proceedings before the Grand Jury which returned the indictment, thereby rendering it impossible for the defense to avail itself of the Grand Jury testimony for possible impeachment purposes and (2) denial of the motion to sever him from appellant Kane.

We review these contentions seriatim.

### JENCKS ACT

Before Mrs. Janet Holmes, a witness for the Government, testified, the Assistant United States Attorney who prosecuted the case informed the court and counsel for the appellants that the witness had been interviewed by an agent of the F.B.I.; that a diligent search of the files in the United States Attorney's office and in the office of the F.B.I. in the City of St. Louis, failed to disclose the existence of the work product of the agent who had interrogated Mrs. Holmes. Additionally, the prosecutor also stated that diligent but unsuccessful efforts were made to identify the interviewing agent by having witness Holmes view all of the agents in the St. Louis, Missouri area. Upon voir dire examination, Mrs. Holmes admitted that during the course of the interview she observed the agent making notes. There was no showing, however, that the witness had any knowledge of what was recorded by the agent. She did not sign any statement, and the notes were not read back to her. After the matter had been fully explored, Judge Harper ruled that the witness could testify and denied the motion to strike her testimony.

From the above recital, the threshold question must necessarily be whether the notes recorded by the agent qualify as a statement within the meaning of the Jencks Act. 18 U.S.C. § 3500(e) provides in pertinent part that the term "statement" means:

(1) a written statement made by said witness and signed *or otherwise adopted or approved by him*; * * * (Emphasis supplied.)

■ Thus, under the statute and ruling case law a statement made by a witness, even though not signed, nevertheless qualifies under the Act and is producible if it is appropriately adopted or approved by the witness. Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); Government of Virgin Islands v. Lovell, 410 F. 2d 307 (3d Cir.), cert. denied, 396 U.S. 964, 90 S.Ct. 440, 24 L.Ed.2d 428 (1969); Cf. Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959).

■ We have diligently searched the record to determine whether there is any basis in fact for holding that there was a producible statement resulting from the interview of the witness by the Government agent. The only evidence on this subject is found in the testimony of witness Holmes. From her undisputed version of what transpired, all we know is, (1) she was interviewed by a Government agent who was making an investigation of the bank robbery; (2) that the Government agent made notes on two ordinary-sized notebook pages as the interview progressed. So far as this record discloses, nothing further occurred and the incident became a closed chapter. Thus, we are left to speculate whether Mrs. Holmes "otherwise adopted or approved" what was recorded by the agent. The evidence conclusively demonstrates that she did not sign anything

and there is not a word of testimony which would justify an implication that the notes were read to or by her. Indeed, from her testimony, it appears that she had no knowledge of the content of what was written by the agent. Thus, we would be required to engage in conjecture in order to hold that the witness made a statement falling within the definition of § 3500(e) or any other provisions of Section 3500. In the posture of the record, we conclude that the court's ruling was proper because there was no proof that a producible statement was made by the witness.

■ Assuming arguendo, that there was in fact a Section 3500 statement made, there is no rational basis for holding that appellants were prejudiced by the failure of the court to order its production. The testimony of witness Holmes was cumulative at best. It was not crucial or vital to the Government's case. Appellants were positively identified by other witnesses—Kane by six, Wilson by five. Here, if ever, the harmless error rule, applicable as it is to § 3500, must be invoked. Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); United States v. Pope, 415 F.2d 685 (8th Cir. 1969); Lewis v. United States, 340 F.2d 678 (8th Cir. 1965); Karp v. United States, 277 F.2d 843 (8th Cir.), cert. denied 364 U.S. 842, 81 S.Ct. 80, 5 L.Ed. 2d 65 (1960).

### BEST EVIDENCE ISSUE

Appellants assert the court erred in accepting oral testimony to prove that the deposits of the First State Bank of St. Charles were insured by the Federal Deposit Insurance Corporation. A brief resume of the key evidence and the proceedings relating thereto will serve to demonstrate the fallacy of appellants' argument.

In the preliminary stage of the testimony of Russell Kansteiner, cashier of the bank, he stated that on November 20, 1968, the day of the robbery, the bank possessed a certificate from the Federal Deposit Insurance Corporation. Over objection, the court permitted the witness to testify that the certificate was at that time in the bank vault. The court ruled, however, that the Government had to lay the proper foundation before the certificate would be admitted into evidence.

The Assistant United States Attorney did not at that time offer to introduce the bank's certificate. He did, however, produce Mrs. Eileen F. Downey, who is now and has been the corporation secretary to the Federal Deposit Insurance Corporation for over thirty years. She testified that a search of the records of the Federal Deposit Insurance Corporation had been made. Over objection on the ground that the original records of the Corporation would be the best evidence, Mrs. Downey stated that the files of the FDIC revealed that the deposits of the bank were insured on the day of the offense. The witness also identified Exhibit 1 as the certificate issued to the bank. The certificate is an exact duplicate of the facsimile of the certificate reproduced in United States v. Skiba, 271 F.2d 644, 645 (7th Cir.), cert. denied 362 U.S. 924, 80 S.Ct. 678, 4 L.Ed.2d 743 (1960) with minor exceptions noted in the margin.[2]

After laying what we regard as sufficient foundation, the United States Attorney offered the certificate, and it was admitted into evidence, without objection.

■ Having failed to heed Rule 51, Federal Rules of Criminal Procedure, which imposes upon a party the duty to make known to the court his objection to the admissibility of the evidence, appellants' belated claim of error is not re-

2. In *Skiba*, the amount of insurance was $10,000, here it was $15,000; the date of issuance was September 21, 1950, here it was January 6, 1967; the number of the certificate was 13676, here 12219–0; and the Chairman of the Board of Directors was Mabel T. Harl, here it was K. A. Randall. Significantly, Mrs. Downey was the Secretary of FDIC when both certificates were issued.

viewable unless the introduction of the certificate constituted grave and fundamental error seriously affecting the substantial rights of the appellants. Rule 52, Federal Rules of Crimianl Procedure; Nash v. United States, 405 F.2d 1047 (8th Cir. 1969); Shaw v. United States, 403 F.2d 528 (8th Cir. 1968); Wood v. United States, 361 F.2d 802 (8th Cir.), cert. denied, 385 U.S. 978, 87 S.Ct. 520, 17 L.Ed.2d 439 (1966). This is not a plain error situation.

■■ Moreover, there is no merit in the substance of the issue. The *Skiba* case, *supra*, demolishes the contention, and rightfully so. Certainly the Secretary of the FDIC should be permitted to identify an insurance certificate issued by her and which bears her signature. We recognize, of course, that proof of the insurance is an essential element of the Government's case, but where, as here, there was no controversy over the deposits being insured, we deem it incongruous to contend that the only competent evidence of the existence of insurance is the *original record* of the Corporation maintained in the home office. See and compare United States v. Ballard, 418 F.2d 325 (9th Cir. 1969); United States v. Huff, 409 F.2d 1225 (5th Cir.), cert. denied, 396 U.S. 857, 90 S.Ct. 123, 24 L.Ed.2d 108 (1969); United States v. Safley, 408 F.2d 603 (4th Cir.), cert. denied, 395 U.S. 983, 89 S.Ct. 2147, 23 L.Ed.2d 772 (1969).

## INSTRUCTIONS ON CREDIBILITY

■ Appellants challenge the court's instruction on credibility of the witnesses, particularly the submission of the *falsus in uno falsus in omnibus* principle.

The instruction, framed in substantially the language recommended by Devitt and Blackmar, Federal Jury Practice and Instructions § 12.05 (1970) is not subject to being branded as an erroneous submission. Any technical defect in the verbiage of the instruction could not, under any plausible rationale, have affected the substantial rights of the appellants. Rule 52(a), Federal Rules of

Criminal Procedure. The contention is rejected.

## GRAND JURY MINUTES

■ Prior to trial the prosecutor stipulated that the grand jury proceedings had not been recorded. Thereupon counsel for appellant Kane orally moved for dismissal of the indictment on the grounds that the Government had failed to preserve the grand jury proceedings in order to prevent appellants from determining whether there had been sufficient evidence presented to the grand jury to support the indictment; and for the purpose of denying appellants, for possible impeachment purposes, the opportunity to examine the testimony of witnesses at trial who also appeared before the grand jury.

Appellant Kane asserts error in the denial of his motion and urges us to reverse with directions to dismiss the indictment.

The question whether the Government is compelled to record grand jury testimony was considered in our recent case of United States v. Franklin, 429 F.2d 274 (8th Cir., 1970), and resolved adversely to the position here espoused by appellants.

Further discussion is unnecessary. We are content to reject appellant's contention on the basis of Judge Vogel's exhaustive exposition of the controlling law in the *Franklin* case.

## THE SEVERANCE ISSUE

Appellant Wilson complains because the district court refused to sever him from appellant Kane, contending that he was denied a fair trial by reason of statements made by Kane during the course of the robbery.

Shortly after appellants had entered the bank Kane informed Cashier Kansteiner, "We're going to hold your bank up this afternoon." Kane made other similar utterances, using the plural pronoun, "We." Wilson claims here that since the statements incriminated him, the principle promulgated in Bruton v. United States, 391 U.S. 123, 88 S.Ct.

1620, 20 L.Ed.2d 476 (1968) was violated, compelling a reversal. We disagree.

 Appellants, having participated in the same act constituting the offense, were properly joined as defendants in the indictment. Rule 8(a), Federal Rules of Criminal Procedure. Wilson's motion to sever having been addressed to the sound discretion of the district judge, was properly denied unless clear prejudice is shown. Rule 14, Federal Rules of Criminal Procedure; Miller v. United States, 410 F.2d 1290, 1292–1293 (8th Cir.), cert. denied, 396 U.S. 830, 90 S.Ct. 81, 24 L.Ed.2d 80 (1969); Caton v. United States, 407 F.2d 367, 372 (8th Cir.), cert. denied, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969). Since the record is devoid of evidence showing that any statement made by Kane prejudiced Wilson, we hold that the court did not abuse its discretion.

The *Bruton* decision, being clearly distinguishable on the controlling facts, does not aid Wilson. Unlike *Bruton,* we are not confronted with admission into evidence of an out-of-court confession made by one defendant which implicated his codefendant. All we have here are statements of one defendant (Kane) uttered during the perpetration of the offense at a time when his codefendant (Wilson) was in the bank, acting in concert with Kane, and actively participating in the holdup. Wilson, who was armed with a carbine rifle, who flourished it in a threatening manner, who was positively identified in court as one of the two robbers, is not in a position to complain of the statements of his partner in the offense, which statements were true expressions of what appellants intended to and did accomplish.

### CONCLUSION

In summary, the record demonstrates that through the efforts of the able and seasoned trial judge appellants' rights were fully and effectively protected. They have had a fair trial.

Affirmed.