**UNITED STATES of America,**
**Appellee,**
v.
**Lloyd Theodore HAMILTON, Appellant.**

**UNITED STATES of America,**
**Appellee,**
v.
**Tommie DUNMORE, Appellant.**

**Nos. 71–1031, 71–1032.**

United States Court of Appeals,
Eighth Circuit.

Dec. 20, 1971.

Rehearing and Rehearing En Banc
Jan. 26, 1972.

Ronald M. Sokol, Asst. Fed. Public Defender, Kansas City, Mo., for appellants.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before MATTHES, Chief Judge, GIBSON, Circuit Judge, and VAN PELT, Senior District Judge.*

MATTHES, Chief Judge.

Count I of an indictment returned on August 6, 1970, in the United States District Court for the Western District of Missouri charged Tommie Lee Dunmore and Lloyd Theodore Hamilton, appellants herein, and Benjamin Andre Franklin and James Ervin Riley, with violation of 18 U.S.C. § 371 by conspiring to perpetrate the armed robbery of "the Suburban Bank and Trust Company . . . Kansas City, Missouri, . . . a banking corporation chartered under and doing business pursuant to the laws of the State of Missouri, with its deposits being insured by the Federal Deposit Insurance Corporation . . .," in violation of 18 U.S.C. §§ 2113(a), (b), (c) and (d). Other persons were named as co-conspirators, but not as defendants.

Count II charged that defendants Benjamin Andre Franklin and James Ervin Riley wilfully and unlawfully took by force and violence from the same bank a substantial sum of money in violation of 18 U.S.C. Sections 2113(a) and 2113(d). This count also charged Dunmore and Hamilton with wilfully and unlawfully aiding and abetting the robbery of the bank, in violation of 18 U.S. C. Sections 2 and 2113(a) and (d).

The appellants, Dunmore and Hamilton, were jointly tried and each was convicted on both counts. At trial, each was represented by separate, appointed counsel. On this in forma pauperis appeal from the judgment of conviction both are represented by Hamilton's trial attorney.

* District of Nebraska, sitting by designation.

Before considering the alleged errors, we briefly consider the pertinent evidence, viewing it as we must in the light most favorable to the government.

On July 22, 1970, the Suburban Bank and Trust Company of Kansas City was robbed by three, unmasked, armed, young Negro men: James Riley, then 18 years old, Robert Stuart, then 17, and Benjamin Andre Franklin. Riley and Stuart were photographed while in the bank committing the offense by surveillance cameras concealed in the bank. Franklin also entered the bank, but is not shown on the photographs apparently because he was positioned near the door and outside the focus of the cameras. The charge was subsequently dismissed as to Benjamin Andre Franklin, who was convicted in a separate proceeding of the robbery of a post office. Both Riley and Stuart pleaded guilty to the robbery in the present proceeding.

The testimony of the admitted accomplices, Riley, Stuart, Gary Burton and Elbert Thompson, showed that appellants Hamilton and Dunmore had planned the robbery, procured the services of these youths to perpetrate it, and had furnished the weapons used; that Burton's home was used as a site for planning the endeavor and disbursing the proceeds; that Thompson's car was used to facilitate the robbers' flight; and that all seven shared in the stolen money.

## I.

Appellants in their joint brief present five contentions of error. Their first point levels this serious charge:

"Appellants were denied a fair trial and due process of law in that the

government *knowingly and intentionally used perjured, false and misleading testimony to obtain their conviction* and withheld evidence favorable to the defense on the issues of their innocence or guilt." (Emphasis supplied)

Appellants' brief, at 34.

Although the word "government" could encompass all federal law enforcement officers involved in the investigation of the offense and the preparation of this case for trial, it is clear that the accusation was aimed at the Assistant United States Attorney who tried the case.[1] Appellants' attorney pinpointed the target of his charge by naming the Assistant United States Attorney several times in brief and oral argument.

■ This allegation is premised on the conclusion appellants' attorney draws from the fact that the testimony at trial was largely uniform among the accomplices while their grand jury testimony varied among them and from their trial testimony. Appellants' counsel deduces from this that all this testimony was perjured to falsely implicate the appellants and strongly implies that the Assistant United States Attorney who prosecuted the charge procured this fabrication in order to incriminate appellants. Counsel, however, equivocated somewhat on that argument and rests primarily on the equally drastic charge that it was the witnesses who concocted the story implicating appellants, but that the prosecutor, in his pretrial interview with the witnesses, persuaded them to alter their grand jury testimony to form a cohesive, persuasive presentation for trial[2] and then failed to state affirmatively at trial that he was aware of the instances of allegedly false recollections resulting from these alterations.[3]

1. Government counsel on appeal was a different Assistant United States Attorney than the government trial attorney.

2. At oral argument, counsel asserted, "What I am charging him [the prosecutor] with is using testimony which he knows, *through his efforts*, has been

changed from prior occasions." Transcription from recording of oral argument. (emphasis supplied.)

3. This charge was never raised before the district court either at trial or by post-trial motion. Counsel explains that failure by saying that it was only later that

As indicated, however, appellants' attorney is able to support these contentions of gross misbehavior by the Assistant United States Attorney only by pointing to inferences he draws from various discrepancies between the trial testimony and previous statements of the accomplices.[4]

Appellants' counsel has not directed our attention to any direct evidence of the procurement by the prosecution, or for that matter by any other person, of perjured testimony. Our careful examination of the transcript shows the variation between the testimony given at trial and before the grand jury relates only to minor facets of the recounting of the conspiracy such as whether, during their first meeting, Robert Stuart was across the street or joined in the conversation, whether the appellants told them the name of the bank on Tuesday or Wednesday, whether before and after the robbery Franklin came into Burton's house or remained in the car, and whether or not appellants told Thompson, or merely inferred to him, that their rental of his car was for a robbery.

As is frequently the situation during a hotly contested trial where numerous witnesses have given testimony on more than one occasion, such as on deposition or before a grand jury and again at trial, there were discrepancies between the grand jury testimony and the trial testimony. But none of the statements of the witnesses relied upon to formulate the assertion of perjury is substantively exculpatory of these appellants. To the contrary the key witnesses consistently testified as to the roles played by appellants in initiating the scheme to rob the bank and aiding and abetting the consummation of the offense. The only alleged inconsistency which goes to the substance of the indictment is Riley's denial upon cross examination that he had told appellant Hamilton's trial counsel by telephone that appellant Hamilton was not involved in this escapade.[5] But, as appellants' counsel conceded at oral argument, since the telephone conversation was raised solely on cross examination, this denial can in no way be ascribed to the prosecution and thus lends no support to the serious allegation here advanced.

To allege that any attorney "knowingly used perjured . . . testimony" is to charge a violation of the legal profession's canons of ethics. Code of Professional Responsibility, DR 7–102(A) (4). To allege as here that the perjury was concocted at the pretrial interview and "through his efforts" is tantamount to an accusation of criminal conduct. 18 U.S.C. § 1622. To allege such misconduct by the Assistant United States Attorney is to allege official perversion of the administration of justice. To air such an allegation without substantial basis is itself questionable conduct. "While a lawyer as a citizen has a right to criticize such officials publicly, he should be certain of the merit of his complaint [and] use appropriate language, . . . for unrestrained and intemperate statements tend to lessen public confidence in our legal system." Code of Professional Responsibility, Ethical Consideration 8–6. The lawyer must be mindful that it "rests with him to preserve the purity

---

he obtained information that the Assistant United States Attorney had in fact held a conference with the government witnesses on Sunday preceding the commencement of the trial on the next day. Of course, it is not unusual for an attorney to interview his witnesses before trial.

4. The admitted accomplices who testified were Riley, Stuart, Thompson, and Bur-

ton. Franklin did not testify before the grand jury or at trial.

5. Hamilton's counsel's version of this telephone conversation appears nowhere in the record and is evidenced only by an appendix to his brief which purports to be a copy of a memorandum dictated by him at the conclusion of the conversation, recounting the contents thereof.

of the legal system" [6] not only by exposing unethical conduct, but also by giving careful scrutiny to his allegations that it exists. The obligation to expose unethical conduct when it comes to his attention "does not permit one to make charges which are . . . unfounded in fact. When one's fancy leads him to make false charges, attacking the character and integrity of others, he does so at his peril. He should not do so without adequate proof of his charges and he is certainly not authorized to make *careless, untruthful and vile charges* against his professional brethren." Code of Professional Responsibility, Canon 8, Note 10, quoting In re Meeker, 76 N.M. 354, 364–365, 414 P.2d 862, 869 (1966), appeal dismissed, 385 U.S. 449, 87 S.Ct. 613, 17 L.Ed.2d 510 (1967) (emphasis supplied).

We are mindful that vigorous advocacy by trial attorneys is commendable and desirable. Indeed, Canon 7, Code of Professional Responsibility, teaches: "The duty of a lawyer, both to his client and to the legal system is to represent his client zealously within the bounds of the law. . . . " EC 7–1. But a lawyer should not become so engrossed in his client's cause that he resorts to making serious charges against his opponent on the basis of conclusions and inferences drawn from an insubstantial factual premise.

An objective consideration of this record leads us to believe that appellants' counsel mistakenly equated minor testimonial discrepancies with perjury of the entire testimony, and that when he learned subsequent to the trial that the Assistant United States Attorney had interviewed the government witnesses on the day preceding the trial, he concluded that the prosecution's participation was the nexus between the discrepancies in the recollection and his conclusion that they evidenced perjury. As stated above, however, these minor inconsistencies related only to details. The record falls far short of supporting a charge of perjury.

In any event, counsel for appellants should have proceeded with more restraint before making charges impugning the professional ethics and character of the Assistant United States Attorney. Counsel would have been better advised to file a motion for a new trial on the ground of newly discovered evidence. Rule 33, Fed.R.Crim.P. This claim of knowing use of perjured evidence would then have been fully explored by the district judge and all parties would have been afforded an opportunity to be heard. Hopefully before charges of this character are again lodged in this court, they will be supported by evidence rather than by suspicion and a fanciful imagination.[7]

Aside from the allegation of procuring perjury, appellants' first argument also inferentially advances the contention of failure to inform defendants of exculpatory matter known to the prosecution. Specifically, appellants allege that the prosecutor failed to point out at trial the instances in which the testimony of the accomplices differed from their grand jury statements [8] and that the prosecutor failed to apprise the court of his alleged awareness of the alleged falsity of the witnesses' various denials of (1) a pretrial rehearsal by the prosecution of trial testimony, (2) promises of lenient treatment in exchange for the testimony incriminating these appellants, and (3) Riley's denial that he had told defense counsel that de-

---

6. Youngdahl, The Lawyer's Responsibilities, 20 Mo.L.Rev. 307, 309 (1955).

7. Our observations concerning the unwarranted allegations made by appellants' counsel are limited exclusively to counsel on appeal and should not be construed to cast any reflection on counsel for appellant Dunmore at trial.

8. "[T]he United States['] . . . witnesses testified materially differently from the grand jury testimony . . . the government knew the testimony so differed. . . . Yet the United States did nothing to correct the trial testimony." Appellants brief, p. 37.

fendant Hamilton was not involved in this operation.

■ Of course, due process is denied "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears," even when "the false testimony goes only to the credibility of the witness," if "the false testimony . . . may have had an effect on the outcome of the trial." Napue v. Illinois, 360 U.S. 264, 269, 272, 79 S.Ct. 1173, 1177, 1179, 3 L.Ed.2d 1217 (1959). Cf. Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957). However, it does not follow that a new trial is required by the failure of the prosecution to impeach its own witnesses with their prior inconsistent statements on minor points. The error would lie in withholding knowledge of those inconsistencies from the defense, but here defense counsel was well aware of the contents of his own conversation with one of the witnesses and the grand jury testimony of each witness was given to defense counsel who were afforded adequate time for its perusal before counsel engaged in cross examination and in probing thoroughly all the inconsistencies referred to on this appeal.

More closely approaching the parameters of Napue is the assertion that the prosecution stood silent while, appellants allege, "[e]ach [accomplice-witness] also denied having discussed their anticipated trial testimony with [the prosecutor] or any other government agent." Appellants' brief, p. 34. A reading of the transcript, however, shows that assertion to be a misstatement of the record. "Each" witness did not deny the pretrial conference because only one was asked about it; and that witness, Stuart, answered truthfully. He conceded he had talked with the F.B.I. twice between the crime and the Saturday preceding the trial. He was then asked if he had discussed his anticipated testimony with the Assistant United States Attorney "in between then." Transcript, p. 165.

His negative answer was correct since the conference was on the Sunday before trial. Of the other three accomplice-witnesses, neither Riley nor Burton was asked about conferring with anyone, and Thompson was asked only if he conferred with Burton, which he admitted.

■ Similarly unfounded is the assertion that the prosecution should have corrected the alleged falsity of the denials of promises of leniency. First, neither Thompson nor Burton was asked on cross examination about any possible nexus between their willingness to testify and the failure of the government to prosecute them for their roles in the conspiracy. Riley and Stuart, who were prosecuted, were asked if "anyone" had told them they could enhance their chances for leniency by testifying, Transcript, pp. 125–27, 165–67, but, unlike each of the Supreme Court decisions cited above, there is no objective proof here of either the falsity of their denials or any awareness by the prosecution thereof. It is true that Riley and Stuart were subsequently sentenced under the Youth Corrections and Juvenile Delinquency Acts, but we cannot agree with appellants' assertion that such sentencing, contrasted with appellants' more severe sentences, shows the witnesses' denials to be "patently absurd." Cooperation with the state may well increase one's chances for leniency, but that is not the only possible causative factor and absent any positive evidence, we are constrained to reject appellants' contention.

## II.

■ Appellants' second and third assignments of error will be considered together. In substance they are (1) that the government failed to prove that the deposits of the bank were insured by the Federal Deposit Insurance Corporation; and (2) that there was no proof that the Suburban Bank and Trust Company was a "bank" at the time of the robbery. Recognizing that the government carries the burden of proving the existence of every essential element of the crime, in-

cluding that the deposits were insured, we are nevertheless constrained to hold on this record that both contentions border on the frivolous.

■ The cashier of the bank produced and identified a copy of the certificate of insurance from the F.D.I.C. issued October 21, 1965, which was admitted into evidence. The cashier's testimony confirmed that the premium for the insurance had been paid annually, that the F.D.I.C. does not cancel the insurance except on notice to the bank, that no such notice had been received by the bank, and that the deposits were insured on the date of the robbery. This proof was sufficient. See and compare, Scruggs v. United States, 450 F.2d 359 (8th Cir. 1971); Kane v. United States, 431 F.2d 172, 175–176 (8th Cir. 1970); United States v. Phillips, 427 F.2d 1035 (9th Cir.), cert. denied, 400 U.S. 867, 91 S.Ct. 108, 27 L.Ed.2d 106 (1970).

■ Although the government did not produce an official certificate showing the Suburban Bank of Kansas City to be a "bank," the record abounds with evidence establishing this fact. The cashier and two tellers testified they were employees of the "Suburban Bank." The term "bank" was used innumerable times by defense attorneys and witnesses. Photographs of the interior and exterior of the bank were introduced, the interior photograph showing the name of the bank. The opening statement in appellants' brief is "On July 22, 1970, the Suburban State Bank of Kansas City, Missouri, was robbed by three young Negro gunmen (T. 32) of Approximately Six Thousand One Hundred Fifty-Six ($6,156.00) Dollars." Appellants' brief, p. 6. This claim is palpably devoid of merit and requires no further consideration.

### III.

■ Appellant Hamilton next contends that the trial court erroneously overruled his discovery motions seeking a continuance for further investigation, pretrial access to statements of witnesses including the grand jury testimony of the co-conspirators named in the indictment, and a bill of particulars. "An application for relief under the discovery rules, however, is a matter within the sound discretion of the district court and is reviewable only for an abuse of discretion." Hemphill v. United States, 392 F.2d 45, 48 (8th Cir.), cert. denied 393 U.S. 877, 89 S.Ct. 176, 12 L.Ed.2d 149 (1968). This is particularly true as to requests for continuances. Id., at 49. Having carefully examined the record we find no abuse of discretion in the court's denial of these motions.

■ Furthermore, the matters sought were not ordinarily discoverable.[9] The request for statements of witnesses not to be called at trial is merely another way of determining whether the co-conspirators named in the indictment would be witnesses at trial, but the identity of witnesses is information "the government is not normally required to supply . . . to the criminal defendant." Spinelli v. United States, 382 F.2d 871, 889 (8th Cir. 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968). Moreover, the government had informed the court in its Omnibus Hearing Report response that the safety of the witnesses required that their identities remain secret. Similarly, the "grand jury testimony is ordinarily not discoverable on a pretrial

9. Appellant Hamilton contends that the discovery sought here cannot be denied him except upon motion by the government for a protective order pursuant to Rule 16(e) Fed.R.Crim.P. Appellants' contention misreads that Rule. Its plain language allows the court to take protective action "at any time." The rule refers to a government motion only for permission to make a showing in camera on a question of whether to take protective action. Furthermore, as shown above, discovery need not be allowed subject to subsequent protective orders. Whether to grant the discovery in the first instance is a matter within the sound discretion of the trial court.

motion. . . ." United States v. Harflinger, 436 F.2d 928, 935 (8th Cir. 1970), cert. denied, 402 U.S. 973, 91 S. Ct. 1660, 29 L.Ed.2d 137 (1971). Accordingly, it was sufficient here that the grand jury testimony of the witnesses was furnished to defense counsel after each testified, with ample opportunity to allow perusal of the transcript. Counsel's extensive use of it in an effort to impeach the co-conspirators amply demonstrates the lack of prejudice in delaying its production. It was also unnecessary to grant the requested bill of particulars since it was designed to discover evidentiary detail[10] and since the five pages of the two-count indictment had more than adequately apprised appellants of the nature of the charges against them. Hemphill v. United States, supra, 392 F.2d at 48, 49; Spinelli v. United States, supra, 382 F.2d at 888–889; Kansas City Star Co. v. United States, 240 F.2d 643, 649–650 (8th Cir.), cert. denied, 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438 (1957).

### IV.

Appellants' remaining arguments are (1) that the court unduly restricted cross examination, (2) that the trial judge made remarks disparaging of counsel, (3) that the court's charge contained comments improperly characterizing appellants and improperly rehabilitating prosecution witnesses, and (4) that Count II of the indictment was duplicitous. We have carefully considered these contentions and find none of them to be meritorious. Certainly none of these complaints prejudiced these appellants nor denied them a fair trial. The evidence of guilt was strong and overwhelming. Neither appellant testified, Hamilton offered no evidence and Dunmore offered only the testimony of

his mother, to the effect that he had been incarcerated 131 days pending trial. We are convinced appellants received a fair trial. Finding no prejudicial error, we affirm.

---

10. In his request for a bill of particulars, appellant Hamilton requested the indictment be further amplified by information of the criminal records of the co-conspirators named therein, any alleged overt acts furthering the conspiracy other than those named, itemization of which of the named

co-conspirators with whom Hamilton was alleged to have conspired, the substance of the conversations mentioned in Count I, the hour of the robbery, the number and description of the guns alleged to have been used, and the inclusive dates of the conspiracy.