**UNITED STATES of America**

v.

**Harry GLOVER et al.**

**Crim. No. 74–664.**

United States District Court,
E. D. Pennsylvania.

May 16, 1975.

254

Frank J. Bove, Philadelphia, Pa., for Government.

Martin A. Ostrow, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

FOGEL, District Judge.

On February 26, 1975, Harry Glover was convicted by a jury of conspiracy and violations of the federal bank robbery statute, 18 U.S.C. § 2113. Before us at this juncture are motions filed in his behalf seeking, in the alternative, a new trial, judgment of acquittal, or arrest of judgment, pursuant to Rules 33, 29, and 34 of the Federal Rules of Criminal Procedure.

Various grounds were originally asserted in support of these motions. We have treated all except one contention as abandoned, since a single issue only has been pressed by defendant in the memorandum of law in support of his motion; namely, that the government failed to adduce competent evidence to establish that the Provident National

Bank was, on October 16, 1974, a bank, the deposits of which were insured by the Federal Deposit Insurance Corporation, as required by 18 U.S.C. § 2113(f).[1]

In order to assess the force of this argument, we will briefly review the evidence offered by the government to establish the federally insured status of the Provident National Bank.

The government initially sought to introduce a document marked as Exhibit FDIC–1, which purported to be a duplicate certificate of insurance issued to the Provident National Bank by the F.D.I.C., accompanied by certificates from Alan R. Miller, Executive Secretary of the F.D.I.C. This document was excluded by the Court for failure to comply with the requirements of Rule 44 of the Federal Rules of Civil Procedure, as incorporated by Rule 27 of the Federal Rules of Criminal Procedure, N.T. 73–82 (February 19, 1975).

A second document was thereupon substituted by the government, marked Exhibit FDIC–1a, which was admitted into evidence, and examined by the jury during deliberations. This document consisted of a duplicate certificate of insurance, accompanied by two certificates

from Mr. Miller, which stated the following:

CERTIFICATE

I, Alan R. Miller, hereby certify and attest that I am Executive Secretary of the Federal Deposit Insurance Corporation, that I have the official custody of the records of the Federal Deposit Insurance Corporation, including the certificate of insurance, a copy of which is annexed hereto. I do further certify that the attached duplicate copy of the certificate of insurance issued to the Provident National Bank, Bryn Mawr, Pennsylvania, is a true and correct copy of the original.

DATED: February 20, 1975.
    /s/ Alan R. Miller
        Executive Secretary
FEDERAL DEPOSIT INSURANCE
        CORPORATION
    24537
    (SEAL)

PROOF OF LACK OF OFFICIAL RECORD

I, Alan R. Miller, hereby certify and attest that I am Executive Secretary of the Federal Deposit Insurance Cor-

---

1. Although defendant now focuses on the single contention which attacks the insured status of the bank, we have carefully examined the other grounds originally asserted, and find them wholly without merit.

After a review of the record, we are satisfied that there was overwhelming evidence of guilt, which fully warranted submission of the issue to the jury, under the standard of United States v. Sutton, 138 U.S.App.D.C. 208, 426 F.2d 1202, 1210 (1969) and United States v. Allard, 240 F.2d 840, 841 (3d Cir. 1957), and heavily preponderates against the grant of a new trial, United States v. Leach, 427 F.2d 1107, 1111 (1st Cir. 1970), cert. den., 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59.

With respect to the admissibility of the statement made by Glover to agents of the Federal Bureau of Investigation, we have previously set forth extensive findings of fact and conclusions of law, N.T. 23–29 (February 4, 1975), which are attached as an appendix

to and made part of this opinion, see United States v. Bowery, No. 74–567, at note 2 (E.D.Pa., May 2, 1975).

Finally, the bank surveillance photographs, Exhibits G–5 through G–20, and G–22, were properly admitted into evidence and submitted to the jury during its deliberations. These photographs were authenticated by testimony from Agent John G. Sommer of the Federal Bureau of Investigation, N.T. 97–110, (February 20, 1975), and Mrs. Jennie E. Eckert, Manager of the Provident National Bank Branch at 3901 Conshohocken Avenue, Philadelphia, Pennsylvania, N.T. 118–120, 123, 133, 135–136, (February 20, 1975), N.T. 17–21, (February 21, 1975), see Mikus v. United States, 433 F.2d 719, 725–726 (2d Cir. 1970). Those photographs marked G–4, G–21, and G–23, which might possibly have been prejudicial to the defendants, were excluded by the Court upon defendants' motion, N.T. 113–114 (February 20, 1975).

poration, that the minutes of the Board of Directors of the Corporation are a part of the official records of the Corporation, and that I have the official custody of the records of the Federal Deposit Insurance Corporation; and I do hereby further certify that after diligent search no record or entry in the official records of the Federal Deposit Insurance Corporation is found to exist which terminated the status of the Provident National Bank, Bryn Mawr, Pennsylvania, as an insured bank under the provisions of section 12B of the Federal Reserve Act, as amended (48 Stat. 168) or section 8(a) of the Federal Deposit Insurance Act, as amended (12 U.S.C. 1818(a) ).

DATED: February 20, 1975

/s/ Alan R. Miller
Executive Secretary

(SEAL)

24537    FEDERAL DEPOSIT INSURANCE CORPORATION

Each of these certificates was in turn accompanied by a certificate of a Notary Public in the District of Columbia, and a certificate from the Chief of the Notary Public Section, Executive Secretary to the Commissioner of the District of Columbia.

The government offered additional evidence by way of testimony from Edwin Keleher, Vice President in Charge of Planning at the Provident National Bank, formerly Comptroller of that institution. Mr. Kelleher testified that on January 25, 1974, he issued a check to the order of the F.D.I.C., in the amount of $453,372.78 covering an assessment for the period ending June 30, 1974, and that he caused to be issued a second check on July 22, 1974, in the amount of $21,474.26, covering the six month period ending on December 31, 1974. He further testified that these checks bore the endorsements of the F.D.I.C. and the Treasurer of the United States, and that the respective amounts were charged to the bank's account in the normal course of business.

To corroborate Mr. Keleher's testimony, the government offered as Exhibit G–2, photocopies of the two checks payable to the F.D.I.C., and computer printouts from the bank's internal records establishing that the proper voucher account was drawn down by the face amounts of the checks. Properly authenticated by Mr. Keleher, N.T. 86, (February 19, 1975), N.T. 8, (February 20, 1975), Exhibit G–2 was admitted into evidence, and submitted to the jury during its deliberations.

We conclude that this evidence, consisting as it did, of certificates, authenticated copies of documents, and live testimony, was properly admissible, and was sufficient to enable a reasonable jury to conclude beyond a reasonable doubt that the Provident National Bank was, on October 16, 1974, a bank the deposits of which were insured by the F.D.I.C.

■ *First*, it is clear that the government is not required to produce the original records of the F.D.I.C., kept in Washington, D. C., but may instead rely upon other admissible evidence to establish the federally insured status of the bank, Kane v. United States, 431 F.2d 172, 176 (8th Cir. 1970).

*Second*, we are satisfied that the duplicate certificate of insurance, accompanied by the certificates from Mr. Miller, complied with the requirements of Rule 44 of the Federal Rules of Civil Procedure, made applicable in criminal cases by Rule 27 of the Federal Rules of Criminal Procedure. The former rule provides, in pertinent part:

### PROOF OF OFFICIAL RECORD

(a) Authentication.

(1) *Domestic*. An official record kept within the United States, or any state, district, commonwealth, territory, or insular possession thereof * * * or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a

copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that such officer has the custody. The certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office.

\*   \*   \*   \*   \*   \*

(b) *Lack of Record.* A written statement that after diligent search no record or entry of a specified tenor is found to exist in the records designated by the statement, authenticated as provided in subdivision (a)(1) of this rule in the case of a domestic record \* \* \* is admissible as evidence that the records contain no such record or entry.

■ Under the provisions of Rule 44, there are two requirements for authentication of a copy of a domestic official record: (1) The copy must be attested by the officer having the legal custody of the record, or by his deputy; (2) There must be a certificate, made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or, alternatively, made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office, stating that the attesting officer

in fact has the legal custody of the original record. *See* Wright and Miller, Federal Practice and Procedure: Civil § 2434, and cases cited therein.[2]

It is clear that Mr. Miller's certificate with respect to the duplicate copy of the F.D.I.C. insurance certificate complies with the first requirement of Rule 44(a). Mr. Miller certifies therein that he is the Executive Secretary of the F.D.I.C., that he has official custody of the records of the F.D.I.C., including the original of the certificate of insurance issued to the Provident National Bank, and that the annexed copy of the insurance certificate is a true and correct copy of the original.

The second requirement of Rule 44(a) is fully satisfied by the certificate of Emily F. Samaha, a Notary Public in the District of Columbia, who certifies that Mr. Miller is in fact the Executive Secretary of the F.D.I.C. and has custody of the official records thereof, and that she has a seal of office and official duties within the District of Columbia where said official records are kept; the certificate of Ms. Samaha is duly authenticated by the seal of her office.

■ Accordingly, we hold that the duplicate copy of the F.D.I.C. insurance certificate, marked as Exhibit F.D.I.C.-1a, was properly authenticated under the provisions of Rule 44(a), Federal Rules of Civil Procedure.

■ *Third,* the law is clear that a properly authenticated duplicate certificate of insurance issued by the F.D.I.C. is admissible as substantive evidence to establish the federally insured status of a bank in prosecutions pursuant to 18

---

2. While defendant has not raised the issue, we have no difficulty in concluding that records of the F.D.I.C. constitute "official records" within the meaning of Rule 44, Federal Rules of Civil Procedure. In a case which was decided shortly after the effective date of the Federal Rules of Civil Procedure, Judge Caffey defined "official records" as "work done by a person in the employment of the Government in the course of the performance of the duties of his position", United States v. Aluminum Company of America, 1 F.R.D. 71, 75 (S.D.N.Y.1939). *For this*

*purpose,* employees of the F.D.I.C. will be considered employees of the United States government. *See e. g.,* 12 U.S.C. § 1811 (Corporation created by Act of Congress), § 1812 (Board of Directors to consist of the Comptroller of the Currency and two persons appointed by the President by and with the advice and consent of the Senate, not more than two of such Directors to be members of the same political party), § 1813 (F.D.I.C. included in definition of the term "appropriate Federal banking agency").

U.S.C. § 2113. See, *inter alia*, United States v. Hamilton, 452 F.2d 472, 479 (8th Cir. 1971), cert. den. 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126; Kane v. United States, *supra*, 431 F.2d at 175; United States v. Thompson, 421 F.2d 373, 379 (5th Cir. 1970) (certificate challenged by defendant as "nothing more than a decorative plaque").

■ *Fourth*, the statement of Mr. Miller with respect to the absence of a record or entry in the official records of the F.D.I.C. terminating the status of the Provident National Bank as an insured institution is properly admissible as substantive evidence, pursuant to the provisions of Rule 44(b):

> (b) *Lack of Record*. A written statement that after diligent search no record or entry of a specified tenor is found to exist in the records designated by the statement, authenticated as provided in subdivision (a)(1) of this rule in the case of a domestic record * * * is admissible as evidence that the records contain no such record or entry.

Mr. Miller certified, in conformity with Rule 44(b), Federal Rules of Civil Procedure, that after diligent search of the official records of the F.D.I.C., no record or entry was found to exist which terminated the insured status of the Provident National Bank. This certification was accompanied by a certificate of Ms. Samaha properly authenticating the certificate of Mr. Miller, according to the provisions of Rule 44(a)(1), as incorporated by Rule 44(b). See Hollingsworth v. United States, 321 F.2d 342, 348, 352 (10th Cir. 1963).

■ *Fifth*, the testimony of Mr. Keleher was properly admissible to establish facts tending to prove the federally insured status of the Provident National Bank. Mr. Keleher, an officer of that institution, testified to the payment of insurance premiums to the F.D.I.C. covering the calendar year 1974, and identified checks and computer printouts representing the pertinent voucher accounts.

While some courts have permitted testimony from bank officers with respect to the ultimate question in issue, that is, whether the bank was in fact insured by the F.D.I.C. at the time of the alleged robbery, *see e. g.*, United States v. Murrah, 478 F.2d 762, 763–764 (5th Cir. 1973); United States v. McIntosh, 463 F.2d 250 (3d Cir. 1972); United States v. Phillips, 427 F.2d 1035, 1036–1037 (9th Cir. 1970), cert. den., 400 U.S. 867, 91 S.Ct. 108, 27 L.Ed.2d 106; United States v. Safley, 408 F.2d 603, 605 (4th Cir. 1969), cert. den., 395 U.S. 983, 89 S.Ct. 2147, 23 L.Ed.2d 772, we adhered to a narrower rule of admissibility, and permitted only testimony with respect to facts within Mr. Keleher's personal knowledge which were relevant to the federally insured status of the bank, N.T. 84–86, (February 19, 1975). Such testimony is clearly admissible, United States v. Hamilton, *supra*, 452 F.2d at 479; Scruggs v. United States, 450 F.2d 359, 361 (8th Cir. 1971).

■ *Sixth*, the cancelled checks and computer printouts, properly identified and authenticated by Mr. Keleher, were admissible as substantive evidence, see United States v. Ballard, 418 F.2d 325, 327 (9th Cir. 1969).

■ For the foregoing reasons, therefore, we are satisfied that there was sufficient admissible evidence to establish federal jurisdiction over the alleged offenses, and for the jury to conclude, beyond a reasonable doubt, that the Provident National Bank was, on October 16, 1974, a bank, the deposits of which were insured by the Federal Deposit Insurance Corporation.

Accordingly, the motions for a new trial, for a judgment of acquittal, and in arrest of judgment will be denied and an appropriate order denying the motions and setting forth the date for sentencing will be entered.

### APPENDIX

(Extracts from Notes of Testimony of February 4, 1975) *

---

* Underlinings of findings of fact and parentheses surrounding citation to Notes of Testimony added.

THE COURT: With respect to Mr. Glover, first as to his statements, the findings of fact are as follows:

*Number one*: Mr. Glover was interviewed by the Philadelphia Police Department [on October 16, 1974] in room 104 of the Police Administration Building in two sessions, the first lasting from 1:10 until 4:00 p. m. and the second from approximately 4:00 p. m. until 6:00 p. m. During the first interview Detectives Donald Lyons, Michael Stanton and Joseph Flanagan were present. Detective Andrews replaced Mr. Flanagan for the second interview. That's finding *number two*.

*Three*: Before the first interview Detective Lyons told Glover that he had a right to remain silent, that he did not have to say anything at all, that any thing he said could and would be used against him, that he had a right to talk to an attorney of his choice before being asked any questions. He had a right to have an attorney present during questioning, that if he could not afford to hire an attorney he would be provided one free of charge to him before questioning, that if he was willing to give a statement he had the right to stop at any time he so wished.

In response to questions, Mr. Glover indicated that he understood he had a right to remain silent; that he understood anything he said could and would be used against him; that he did not wish to remain silent; that he understood he had a right to talk to an attorney before being questioned and he understood if he could not afford to hire an attorney he would not be questioned until one was appointed free of charge for him; that he did not wish to talk to an attorney at that time; that he was willing to answer questions of his own free-will and volition without force or fear or coercion of any kind, without any threats or promises, and he did not hesitate to answer these questions.

*Number four*: There is no evidence that Mr. Glover was handcuffed while being questioned, although he was handcuffed when left alone from approximately 6:10 p. m. until 7:40 p. m., a period of about one and one-half hours. Notes of testimony, ninety-nine. [All references are to the transcript of the hearing on January 20, 1975.]

*Fifth*: About 5:00 p. m. the statement was interrupted for fifteen minutes so that he could go to the lavatory. At this time he was given cigarettes and water. (Notes of testimony, eighty-one, Government's exhibit 5.)

*Number six*: During the interview Mr. Glover did not appear injured nor did he complain of any injuries. (Notes of testimony, eighty-eight.)

*Seven*: From 6:00 p. m. until 6:10 p. m. he read and signed the statement, that is, Mr. Glover.

*Eight*: From 7:38 until 9:47 p. m. Agents King, Egelston and Sackreiter interviewed Mr. Glover. An advice of rights form was read aloud and signed by him, that is, by Mr. Glover. (Notes of testimony, 121, exhibit G–8.) What was signed by him was the waiver of rights.

*Number nine*: Statement was signed by Mr. Glover, exhibit G–9A, which further stated that he, Mr. Glover, had been advised of his rights and had signed the waiver form.

*Ten*: During the interview by the Federal Bureau of Investigation Mr. Glover appeared very apprehensive and under a certain amount of strain but did not show extraordinary strain or duress, given all the circumstances attendant to that kind of interview within the context of the interview. (Notes of testimony, 134.)

With respect to the conclusions of law, the same conclusions of law that I read as far as Mr. Choice's case is concerned applies to Mr. Glover, namely, numbers one, two, three, four and seven which I will repeat for this record if counsel so requests or, if it's satisfactory from counsel's viewpoint, I will incorporate the conclusions of law numbers one, two, three, four and seven from my decision with respect to the Choice matter as the conclusions of law that would be the first

conclusions of law as to Mr. Glover but it's your pleasure on that score.

MR. OSTROW: It's acceptable, your Honor.

THE COURT: Pardon?

MR. OSTROW: That's acceptable, your Honor.

THE COURT: All right. So it's clear that those conclusions of law number one, two, three, four and seven that I read in connection with the determination of Mr. Choice's motion are the conclusions of law which also apply to Mr. Glover.

[1. If interrogation of a defendant in custody occurs without the presence of an attorney and a statement is taken, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privileges against self incrimination and his right to retained or appointed counsel." Miranda v. Arizona, 384 U.S. 436, 475 [86 S.Ct. 1602, 1628, 16 L.Ed.2d 694] (1966).

[2. A high standard of proof is required for the waiver of constitutional rights. Miranda v. Arizona, *supra*, 384 U.S. at 475, [86 S.Ct. 1602], Johnson v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461] (1938).

[3. An express statement that the defendant in custody is willing to make a statement and does not want an attorney, followed closely by a statement, may constitute a waiver of rights under the Fifth and Sixth Amendments. Miranda v. Arizona, *supra*, 384 U.S. at 475 [86 S.Ct. 1602].

[4. The physical condition of a defendant, his hospitalization, medication, etc., are factors to be considered in determining whether a statement was made after a constitutionally effective waiver of rights. Beecher v. Alabama, 389 U.S. 35, 36 [88 S.Ct. 189, 19 L.Ed.2d 35] (1967).

[7. The proper standard for the trial court in this situation was stated by the Court in Pettyjohn v. United States, [136 U.S.App.D.C. 69] 419 F. 2d 651, 654, n. 7 (D.C.Cir. 1969), cert. den., 397 U.S. 1058 [90 S.Ct. 1383, 25 L.Ed.2d 676]:

"* * * the validity of any *Miranda* waiver must be determined by the court's inspection of the particular circumstances involved, including the education, experience and conduct of the accused as well as the credibility of the police officers' testimony. The Court will then objectively assess all the aforementioned factors and determine whether the waiver was valid."]

Now, with respect to the statement of the Philadelphia Police, as to that motion, here, again, there again would be mixed findings of fact and law.

*First*, Mr. Glover was not injured at the time of the interview.

*Second*: The circumstances of the interview were not sufficiently coercive to prevent a valid waiver of rights.

*Third*: Detective Lyons read a rights statement to Mr. Glover which comports with the standards of the Miranda case.

*Four*: Mr. Glover heard and understood these rights as they were read to him.

*Five*: Mr. Glover knowingly and intelligently waived his fifth and sixth amendment rights by his express statements to this effect. Again, the Miranda case is the basis for that.

*Sixth*: Mr. Glover further indicated that his statement was made voluntarily by reading it for ten minutes and then signing it.

*Seventh*: The statement given to Detective Lyons was voluntary within the meaning of 18 United States Code Section 3501 in accordance with the factors and standards established by the same code under Section 3501(b).

Next with respect to the statement to the Federal Bureau of Investigation.

*First*, Mr. Glover was not injured at the time of the interview, although he did complain that he had been handcuffed.

*Second*: An advice of rights form which comports with the standards of the Miranda case was read aloud and was signed by Mr. Glover and witnessed by Agent Egelston and Sackreiter.

*Third*: Mr. Glover understood the rights and knowingly and intelligently

and knowledgeably waived his fifth and sixth amendment rights through his express signed statement to this effect.

*Fourth*: Mr. Glover further established the voluntary character of his waiver by signing the statement.

*Fifth*: The statement given to agents of the Federal Bureau of Investigation, the statement was voluntary within the meaning, again, of 18 United States Code 3501 in accordance with the factors established by that code under sub-section (b) of that section, 3501.

*Sixth*: The circumstances of the interview were not sufficiently coercive to prevent a valid waiver.

Therefore, once again, the Government has met what I would characterize as its heavy burden of demonstrating waiver and, therefore, the statements are admissible at the trial.