UNITED STATES of America, Appellee,

v.

Gerald L. LUCAS, Appellant.

No. 89–1287.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1989.

Decided March 12, 1990.

R. Steven Brown, Springfield, Mo., for appellant.

J. Daniel Stewart, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

A jury convicted Gerald Lucas of robbing two branches of the Home Savings Association in violation of 18 U.S.C. § 2113 (1988). On appeal, he argues: (1) that the Government failed to prove, as required by section 2113, that the Federal Savings and Loan Insurance Corporation (FSLIC) insured Home Savings' deposits when the robberies occurred; (2) that a gun seized when he was arrested should have been suppressed; (3) that the district court[1] erroneously permitted Lucas' girlfriend to identify him, at

trial, in surveillance photographs; and (4) that the district court improperly considered certain of Lucas' past arrests and convictions when sentencing him.

Lucas was initially tried on a charge of robbing the Home Savings Association branch at 2614 Independence Avenue in Kansas City, Missouri. A mistrial was declared when the jury failed to reach a unanimous verdict. After the mistrial, the Government filed a superseding indictment charging Lucas not only with robbing the Independence Avenue location, but also with robbing a Home Savings branch at 3568 Broadway Street in Kansas City, Missouri.

At the second trial, the Government attempted to prove that the FSLIC insured Home Savings' deposits by introducing a Certificate of Insurance issued by the FSLIC to Home Savings and by the testimony of two witnesses. Joe Cruse, the manager of the Broadway branch, identified the Certificate of Insurance, stated that it covered all of Home Savings' branches, and said that it was in effect when the robberies occurred. A teller at the Independence Avenue branch, Dana Glorioso, also testified that the FSLIC insured the accounts of the Independence Avenue branch during the relevant time period.

Lucas was arrested in the kitchen of an apartment at 3499 Wyoming Street in Kansas City, Missouri. Hope Lane, Lucas' girlfriend, opened the apartment door when police officers knocked upon it. Through the doorway, the officers saw Lucas sitting in the kitchen with two other persons. As the officers walked toward Lucas, he stood up and reached toward a kitchen cabinet. He repeatedly stretched his arm toward the cabinet during his ensuing struggle with the arresting officers. After Lucas was subdued, one of the officers opened the cabinet door and found a pistol.

On June 6, 1988, Lucas filed a motion in the district court to suppress introducing the gun into evidence. In that motion, he

1. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

argued that the search of the cabinet was not a permissible warrantless search incident to his arrest, *see Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), because he had been handcuffed before the search was made. After conducting an evidentiary hearing, the magistrate,[2] citing *United States v. Palumbo,* 735 F.2d 1095 (8th Cir.), *cert. denied,* 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984), and *United States v. Queen,* 847 F.2d 346 (7th Cir.1988), upheld the search as incident to Lucas' arrest.

Lucas filed objections to the magistrate's report in the district court. In those objections, he reiterated his argument that the weapon was not within his immediate control when it was seized. After reviewing the report on a de novo basis, the district court[3] adopted all of the report's conclusions and reasoning.

At the second trial, the Government asked Lucas' girlfriend to identify him in surveillance photographs taken during the bank robberies. Lucas' objection to allowing such an identification was overruled, and she did testify regarding the photographs.

The district court, when sentencing Lucas, had before it his record which included a number of arrests and convictions. In evaluating Lucas' claimed incompetence, the district court considered this entire record.

## I.

■ The indictment in this case stated that the accounts of Home Savings were insured by the FSLIC. Thus, the Government was required to show that the money stolen by Lucas was insured by the FSLIC. *See* 18 U.S.C. § 2113(g); 12 U.S.C. §§ 1724–1730 (1988). Lucas argues that

the decisions in *United States v. Hadley,* 671 F.2d 1112 (8th Cir.1982); *United States v. Brown,* 616 F.2d 844 (5th Cir.1980); *United States v. Fitzpatrick,* 581 F.2d 1221 (5th Cir.1978) (per curiam); *United States v. Clemons,* 532 F.2d 122 (8th Cir. 1976) (per curiam); *Scruggs v. United States,* 450 F.2d 359 (8th Cir.1971), *cert. denied sub nom.* 405 U.S. 1071, 92 S.Ct. 1521, 31 L.Ed.2d 804 (1972); and *Kane v. United States,* 431 F.2d 172 (8th Cir.1970), demonstrate that the Government's proof of insurance coverage was deficient in this case.

To establish the insurance element, the Government offered Home Savings' Certificate of Insurance and testimony by both a branch manager and teller. Lucas contends that this proof was inadequate because it contained neither testimony by a bank officer nor a cancelled check showing that Home Savings had paid a premium covering FSLIC insurance for the date of the robberies. We are not persuaded by this argument.

Although Lucas relies on cases in which a cancelled check or testimony by a bank officer[4] was offered to help establish the element of federal insurance, none of those cases held that the Government's proof would have been insufficient without those items. While the proof in this case was less than ideal, we believe that Mr. Cruse's responsibilities as a branch manager qualified him to testify regarding the insured status of the institution's funds. It is also significant that the Government's evidence concerning insurance was uncontradicted. Therefore, we hold that the Government's burden of establishing the existence of federal insurance has been satisfied on the record before us.[5] In so holding, we note

2. The Honorable Calvin K. Hamilton, Chief United States Magistrate for the Western District of Missouri.

3. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri, presided at the first trial.

4. In *Kane,* an officer of the FDIC, rather than a bank officer, testified. *See* 431 F.2d at 175.

5. Like the Fifth Circuit, "we have difficulty comprehending why the Government repeatedly fails to prove this element more carefully since the Government's burden is so simple and straightforward." *Maner,* 611 F.2d at 112; *cf. United States v. Shively,* 715 F.2d 260, 264–65 (7th Cir.1983) (holding that a nine year old Certificate of Insurance, standing alone, was insufficient evidence of an institution's insured status for purposes of 18 U.S.C. § 1014 (1982)),

that other circuits have accepted similar proof as sufficient. *See, e.g., United States v. Baldwin,* 644 F.2d 381, 385 (5th Cir. Unit A June 1981) (per curiam) (either a Certificate of Insurance or uncontradicted testimony sufficient); *United States v. Ford,* 642 F.2d 77, 78 (4th Cir.) (a Certificate of Insurance plus testimony by a branch manager sufficient), *cert. denied,* 451 U.S. 917, 101 S.Ct. 1996, 68 L.Ed.2d 310 (1981). *See generally United States v. Maner,* 611 F.2d 107, 111 n. 1 (5th Cir.1980) (collecting cases).

## II.

■ Lucas argues that the search that produced the gun falls outside the scope of the doctrine governing searches incident to arrest. In *Chimel,* 395 U.S. 752, 89 S.Ct. 2034, the Supreme Court discussed the permissible scope of a warrantless search incident to a lawful arrest, and it held that, "There is ample justification ... for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763, 89 S.Ct. at 2040. *Chimel* reveals the Court's belief that allowing warrantless searches incident to arrest will promote the safety of arresting officers and avoid the possible destruction of evidence. *Id.*

The magistrate found that Lucas was seated at a kitchen table with two other men as the officers stood in the front doorway of the apartment in which he was arrested. As Lucas began to get up from the table, the officers entered the apartment and ran into the kitchen. Two officers attempted to apprehend Lucas, and one officer monitored the other two men seated at the table. By the time the officers reached Lucas, his hand was within inches of the handle on a cabinet door. During the ensuing struggle, which lasted for approximately forty seconds, Lucas and the two officers slid around on the slick floor. At one point, Lucas fell to the floor, and the skirmish continued until Lucas was handcuffed. As an officer pulled Lucas

from the floor and moved him toward the living room, another officer immediately stood up, opened the cabinet door that Lucas had been attempting to reach, and found a chrome automatic pistol inside the cabinet. The two men seated at the kitchen table were not handcuffed until after the gun was discovered. (Magistrate's Report ¶¶ 3, 4, 5, 6 and 7, at 5–6). The magistrate's findings were adopted by the district court after de novo review, and no argument is made on appeal that they are clearly erroneous. *See United States v. Thompson,* 876 F.2d 1381, 1383 (8th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 192, 107 L.Ed.2d 147 (1989); *see also United States v. Rodriguez,* 888 F.2d 519, 521–22 (7th Cir.1989) (providing a convincing argument for applying clearly erroneous review to a magistrate's findings that have been adopted by a district court). Our analysis is thus based upon these facts.

Lucas argues that *Chimel* does not justify the search here because he was being escorted, handcuffed, from the kitchen when the search occurred. While relevant under *Chimel,* this is not a determinative factor. Rather, the question is whether, in light of all of the circumstances, the police conducted a valid search incident to Lucas' arrest. Considering the totality of the circumstances, we hold that they did.

*Palumbo,* 735 F.2d at 1097, in accord with *New York v. Belton,* 453 U.S. 454, 457–62, 101 S.Ct. 2860, 2862–65, 69 L.Ed.2d 768 (1981), establishes that a warrantless search incident to an arrest may be valid even though a court, operating with the benefit of hindsight in an environment well removed from the scene of the arrest, doubts that the defendant could have reached the items seized during the search. *Cf. United States v. Bruton,* 647 F.2d 818, 823 (8th Cir.) (stating that this court "should not, in the quiet of our chambers, look with eagle's eyes to spy out flaws in the officers' reasoning after the fact" when evaluating the reasonableness of a search), *cert. denied,* 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981). The officers in this

*cert. denied,* 465 U.S. 1007, 104 S.Ct. 1001, 79  L.Ed.2d 233 (1984).

■

case searched a cabinet in a small [6] kitchen immediately after handcuffing Lucas and while removing him from the kitchen. Moreover, two of Lucas' friends who had not been handcuffed were still at the kitchen table when the search took place. On these facts, we conclude that this was a valid warrantless search incident to Lucas' arrest. This conclusion is consistent not only with *Palumbo* but also with opinions from other circuits. *See Queen,* 847 F.2d at 352–54 (holding search valid even though it occurred when arrestee was handcuffed and guarded by two police officers several feet from the searched area); *United States v. Silva,* 745 F.2d 840, 847 (4th Cir.1984) (upholding search begun after arrestees were handcuffed, placed on beds, and monitored by federal agents), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1404, 84 L.Ed.2d 791 (1985); *United States v. Fleming,* 677 F.2d 602, 606–08 (7th Cir.1982) (approving the search, after arrestees were handcuffed, of a paper bag that was in police custody).

In upholding the search here, we are persuaded by the Seventh Circuit's reasoning in *Fleming,* 677 F.2d 602. While acknowledging that "[i]t is surely possible for a *Chimel* search to be undertaken too long after the arrest and too far from the arrestee's person," *id.* at 607, the court recognized in *Fleming* that "it does not make sense to prescribe a constitutional test that is entirely at odds with safe and sensible police procedures," *id.* The court then held that the fact that the defendants had been handcuffed and that reinforcements had arrived before the search began "should not be determinative, unless we intend to use the Fourth Amendment to impose on police a requirement that the search be absolutely contemporaneous with the arrest, no matter what the peril to themselves or to bystanders." *Id.* We agree with these observations, and we conclude that the search in this case was a valid search incident to Lucas' arrest.

### III.

■ Relying on *United States v. Farnsworth,* 729 F.2d 1158 (8th Cir.1984), Lucas also argues that the district court erroneously permitted Hope Lane to identify him in surveillance photographs taken during the two robberies. In *Farnsworth,* we interpreted Federal Rule of Evidence 701 to authorize lay opinion testimony "concerning the identity of a person depicted in a surveillance photograph ... if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph *than is the jury."* 729 F.2d at 1160 (emphasis added). Relying on *Farnsworth,* Lucas argues that Lane should not have been allowed to identify him in the photographs because she "was [no] more likely to identify Lucas from the photographs in question *than were the bank employees that had previously identified Lucas."* (Appellant's brief at 26 (emphasis added)). This argument is untenable, because Rule 701 does not demand that lay opinion testimony be given by the person most qualified to offer that opinion; rather, it provides that such testimony may be admitted if it will assist the jury in the "determination of a fact in issue." Fed.R.Evid. 701.

As we observed in *Farnsworth,* Rule 701 is satisfied in this context if "the witness is familiar with the defendant's appearance around the time the surveillance photograph was taken and the defendant's appearance has changed prior to trial." 729 F.2d at 1160. Hope Lane was undoubtedly familiar with Lucas' appearance, because she had lived with him for some period of time. Furthermore, although Lucas' counsel argued that Lucas looked "approximately" the same at trial as in the photographs, the district court, in ruling on the question, stated that Lucas had facial hair in the photographs but not at trial. (Tr. 246). After reviewing the record, we conclude that the district court did not abuse its discretion by allowing Lane to identify Lu-

---

**6.** The magistrate found that the kitchen "was approximately five to six feet long and five to six feet wide" when measured from wall to wall. (Magistrate's Report ¶ 5, at 5). Furthermore, the "walkway" between the appliances and cabinets was only "two and one-half to three feet wide." *Id.*

cas in the photographs. *See United States v. Mallen*, 843 F.2d 1096, 1101 (8th Cir.) (admissibility determinations reviewed only for abuse of discretion), *cert. denied*, —— U.S. ——, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988).

## IV.

Lucas argues that the district court erred during sentencing by considering certain charges filed against him which did not result in convictions and some charges in which he was not represented by counsel.

In general, "a trial judge in the federal judicial system ... has wide discretion in determining what sentence to impose" and "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). This principle has been codified in 18 U.S.C. § 3661 (1988), which states that:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

We have on several occasions emphasized the breadth of information that a court may evaluate in sentencing. *See, e.g., United States v. Gooden*, 892 F.2d 725, 727–28 (8th Cir.1989); *United States v. Marin–Cifuentes*, 866 F.2d 988, 996–97 (8th Cir.1989); *United States v. Papajohn*, 701 F.2d 760, 763 (8th Cir.1983).

▪ Lucas relies upon *Tucker*, a case which the Supreme Court remanded for resentencing because the district court had unknowingly based Tucker's sentence, in part, upon an uncounseled conviction that had been obtained in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *See* 404 U.S. at 443–49, 92 S.Ct. at 590–93. *Tucker* does not help Lucas, because his only conviction that might have been uncounseled, resulting in a $25 fine on a charge of giving false information in connection with a robbery investigation, was not included in the district court's lengthy enumeration of charges against Lucas. Furthermore, even if the district court did consider that conviction, we cannot conclude that it had an improper effect on the sentencing proceedings, since there existed many more serious charges against Lucas. *See United States v. Peagler*, 847 F.2d 756, 757–58 (11th Cir. 1988) (per curiam).

▪ We are satisfied that in sentencing Lucas, the district court considered these earlier arrests and charges only for the limited purpose of evaluating Lucas' claims of incompetence and his bizarre and disruptive behavior during sentencing, including his statements that he had no brain, but rather an electric monitor in his head and had been paroled for being a vegetable.[7] Hope Lane testified at trial that Lucas had told her that he was going to "play crazy" to beat the charges against him. (Tr. 251). The district court made clear that even though Lucas had not been convicted of some of the charges, it was appropriate to consider them to establish his background. The district judge found that Lucas had "played [his] game long enough in [the district] court," stated that Lucas had not fooled that court as he fooled other courts, and found him to be competent and putting on an act. (Tr. 382).

The sentencing transcript reveals that the district court was fully aware of the details of Lucas' record, carefully outlining the charges resulting in conviction, those in which he was found to be incompetent to stand trial, and several cases where charges had been filed and were pending at the time of sentencing, with indications that state authorities were awaiting the results of the federal sentencing.

---

7. Prior to Lucas' trial, the Honorable Russell G. Clark, United States District Judge for the Western District of Missouri, conducted a hearing and held that Lucas was competent to stand trial. Although Lucas repeatedly disrupted his sentencing proceedings, the district court stated that Lucas' outbursts did not influence his sentence.

The district judge specifically stated that the sentences were based upon the evidence as he saw and observed it, plus the findings of guilt and Lucas' record as a repeated armed robber, and that the sentence would be the same even if he took into account only Lucas' two earlier armed robbery convictions.

While the consecutive sentences of twenty-five years are substantial, we cannot conclude that the district court abused its discretion in sentencing, particularly when it articulated the two earlier armed robbery convictions.

## V.

Finding no error, we affirm the judgment of the district court.