1997-NMCA-048

940 P.2d 1200

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Antonio Alonzo MARTINEZ,
Defendant–Appellant.**

No. 17503.

Court of Appeals of New Mexico.

May 1, 1997.

Tom Udall, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Eric D. Dixon, Portales, for Defendant–Appellant.

*OPINION*

HARTZ, Chief Judge.

(1) Defendant pleaded guilty to a charge of possession of marijuana with intent to

distribute. He reserved the right to appeal the denial of his motion to suppress marijuana found in his home when officers executed a warrant to arrest him on another drug charge. The sole issue on appeal is the legality of the search that revealed the marijuana. We hold that the record before us is insufficient to support the search and therefore reverse.

## BACKGROUND

(2) At approximately 6 a.m. on November 30, 1994 four law enforcement officers went to 220 West Tenth Street in Clovis, New Mexico, to execute a warrant to arrest Defendant for trafficking cocaine. Deputy Sheriff John Mares and a fellow deputy from the Curry County Sheriff's Office went to the back of the house while state police Officer Clifford Frisk and Joe Casarez, a special agent for the district attorney's office, went to the front door.

(3) The officers at the front door knocked and announced their identity. The lights in the house came on and Defendant looked at the officers through a window in the front door. The officers identified themselves in Spanish and stated that they had an arrest warrant. The porch light and interior light then went out, so the officers kicked open the front door. For the convenience of the reader, we include the following sketch of the premises:

X: Where marijuana found
O: Where Defendant told to freeze

The officers entered the living room with their weapons drawn and saw Defendant, wearing briefs, standing just past the doorway to Bedroom # 1. They ordered Defendant to freeze. He complied and was handcuffed.

(4) The two deputies then entered through the rear of the residence. The officers searched for any other persons who might be in the house and also looked for weapons. They found a Mr. Nunez in Bedroom # 2 and a shotgun in Bedroom # 1, near where Defendant was originally seen. Later, Deputy Mares looked in an open closet in Bedroom # 1 and saw a box containing some loose cartridges. While looking through the box and picking up the cartridges, he found a paper sack. He opened it and discovered baggies of marijuana. Mares testified that his purpose in looking through the sack was "to see if there was a weapon in there that would match the cartridges in the box."

(5) Defendant does not challenge the legality of the arrest or the entry into the home. His sole contention is that Mares had no authority to conduct a warrantless search of the paper sack.

## DISCUSSION

(6) On appeal the State contends that Mares was conducting a lawful search inci-

dent to an arrest. The appropriate scope of a search incident to an arrest was set forth by the United States Supreme Court in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The Court wrote:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. *There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.*
>
> There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The "adherence to judicial processes" mandated by the Fourth Amendment requires no less.

*Id.* at 762–63, 89 S.Ct. at 2040 (emphasis added) (footnote omitted); *accord Rodriquez v. State*, 91 N.M. 700, 703–04, 580 P.2d 126, 129–30 (1978); *see State v. Capps*, 97 N.M. 453, 455, 641 P.2d 484, 486 (1982) (noting that United States Supreme Court had expanded scope of search incident to arrest for arrest of occupant of automobile).

(7) In applying the *Chimel* test we must be sensitive to the dangers to law enforcement officers in an unpredictable and highly charged situation. "Every arrest must be presumed to present a risk of danger to the arresting officer." *Washington v. Chrisman*, 455 U.S. 1, 7, 102 S.Ct. 812, 817, 70 L.Ed.2d 778 (1982). Law enforcement officers need not "'presume that an arrestee is wholly rational.'" *United States v. Queen*, 847 F.2d 346, 354 (7th Cir.1988) (quoting *United States v. McConney*, 728 F.2d 1195, 1207 (9th Cir.1984) (en banc)). Even a handcuffed arrestee may be foolhardy enough to try to seize a nearby firearm. *See id.* at 353–54 (defendant was handcuffed behind his back). Moreover, "'[c]ustodial arrests are often dangerous; the police must act decisively and cannot be expected to make punctilious judgments regarding what is within and what is just beyond the arrestee's grasp.'" *Id.* at 353 (quoting *United States v. Lyons*, 706 F.2d 321, 330 (D.C.Cir.1983)). We will not demand finely choreographed coordination among the officers. An officer securing the area within the arrestee's reach need not determine precisely when other officers have obtained complete control over the arrestee. *See United States v. Lucas*, 898 F.2d 606, 609–10 (8th Cir.1990) (defendant reached toward a kitchen cabinet as officers approached him; after he was subdued one officer opened the cabinet door and seized a pistol as another officer pulled the defendant from the room); *United States v. Parra*, 2 F.3d 1058, 1063 (10th Cir.1993) (as two suspects were subdued and handcuffed, an officer lifted a bed pillow and discovered a pistol underneath; after the suspects were seated on the ground with their hands cuffed behind their backs, another officer lifted up a second pillow and found drugs); *cf. United States v. Nelson*, 102 F.3d 1344 (4th Cir.1996) (shoulder bag removed from arrestee's person can be searched without warrant a few minutes after arrest). Also, the presence at the scene of persons other than the arrestee may justify searching for weapons in their immediate vicinity. *See Lucas*, 898 F.2d at 609–10; 3 Wayne R. LaFave, *Search and Seizure* § 6.3(c), at 308 (3d ed. 1996).

(8) To say that we will be sensitive to the safety concerns of law enforcement officers,

and even be deferential to their judgment in a stressful setting, does not mean, however, that we will give them carte blanche. An arrest in a residence does not confer blanket authority to search the residence for weapons. Any search for weapons must satisfy the constraints of *Chimel* with respect to the extent of the area that can be searched.

 (9) The evidence at the suppression hearing was inadequate to justify the search of the paper sack as incident to Defendant's arrest. We recognize that we must view the evidence in the light most favorable to affirmance of the district court's decision not to suppress the evidence. *See State v. Reynolds,* 119 N.M. 383, 384, 890 P.2d 1315, 1316 (1995); *State v. Juarez,* 120 N.M. 499, 502, 903 P.2d 241, 244 (Ct.App.), *cert. denied,* 120 N.M. 184, 899 P.2d 1138 (1995). At the same time, however, the State bears the burden of proving facts that justify a warrantless search and seizure. *See State v. Wright,* 119 N.M. 559, 562, 893 P.2d 455, 458 (Ct.App. 1995).

(10) During the suppression hearing the State's theory was that the officers had a right to secure the bedroom for weapons, apparently regardless of who was in or near the bedroom at the time of the search for weapons. The prosecutor made no attempt to place either Defendant or Nunez at the time of the search of the paper sack. Mares and Casarez were the only witnesses at the hearing. The prosecutor did not ask Mares where Defendant or Nunez was. As for Casarez, his answers on direct examination provided only limited information regarding the locations of the two occupants of the home. He testified that after Defendant complied with his order to stop, the officers placed Defendant on the floor and handcuffed him. Then Nunez was found in Bedroom # 2. Once the house was secured, Defendant was formally arrested and given *Miranda* warnings. Casarez believed that Defendant was in the kitchen when the warnings were given.

(11) The officers' explanations for the search for weapons did not refer to the locations of the occupants. Casarez testified that the drugs were found while other officers were searching for additional suspects after Nunez was found in Bedroom # 2. Mares's sole explanation for the search of Bedroom # 1 was as follows:

> The residence is already entered. I walked into the residence. I believe I was following [the other deputy]. I believe [the other deputy] found a shotgun, in the—I believe it was the second room in the house. At that time I started securing that particular room for weapons and tried to get everything picked up, make sure everything's safe.

(12) This evidence elicited by the prosecution could not justify the search of the paper sack as incident to Defendant's arrest. Nothing indicated that the sack was within the area from which Defendant "might gain possession of a weapon or destructible evidence." *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040.

(13) Questioning by defense counsel elicited further information, but that information does not change the result. Casarez testified that he was not concerned for his safety when Mares went to the bedroom. Then, after Casarez admitted that he had handcuffed Defendant's hands behind his back, the cross-examination continued:

Q: And so at that point in time [Defendant] wasn't a threat to reaching for a firearm, isn't that true?

A: Correct.

Q: Or destroying evidence, isn't that true?

A: Correct.

Q: Now [Defendant] was brought into the living room, isn't that true?

A: Yes, sir.

Q: And he was asked to sit on the sofa?

A: I know at one point he was sitting on the sofa. Who asked him, I don't know.

Q: And he was sitting on the sofa with his hands behind his back, is that right?

A: Yes, sir.

(14) As for Mares, he testified on cross-examination that when he looked through the closet either Defendant or Nunez was in Bedroom # 1, although he did not remember which one. He added, however, that there was no immediate danger to his safety in the

room and that when he was looking in the box he was not concerned that either Defendant or Nunez would get into the box.

(15) We should not overemphasize the importance of the testimony by Casarez and Mares that they did not sense immediate danger at the time of the search of the sack. The state of mind of the law enforcement officer is not dispositive in determining the constitutionality of a search or seizure. Ordinarily, the propriety of an officer's action is based on the information known to the officer, not on the officer's motive or understanding of the law. *See Ohio v. Robinette,* —— U.S. ——, —— – ——, 117 S.Ct. 417, 420–21, 136 L.Ed.2d 347 (1996); *Whren v. United States,* 517 U.S. 806, ——, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996); *State v. Bolton,* 111 N.M. 28, 42, 801 P.2d 98, 112 (Ct.App.1990). Nevertheless, the testimony by Mares and Casarez regarding their evaluation of the danger is indicative of the objective facts at the time of the search of the box and confirms our unwillingness to engage in the speculation that would be necessary to justify the search as incident to Defendant's arrest. *Cf. Stansbury v. California,* 511 U.S. 318, 325, 114 S.Ct. 1526, 1530, 128 L.Ed.2d 293 (1994) (officer's subjective view may bear on credibility of officer's account of what happened).

(16) The only evidence suggesting that the box was within the area from which a non-officer could have grabbed a weapon is Mares's testimony that either Defendant or Nunez, he did not know which, was in the room when he searched the box. If it was Defendant, however, it was undisputed that Defendant had already been handcuffed behind his back. Moreover, he was probably not too close to the closet. Although apparently Defendant was originally handcuffed on the floor of the bedroom, Casarez testified that he had taken only a "quick glance" of the bedroom, an unlikely event if Defendant was detained in that room for more than the minimal time needed to handcuff him. If the other person referred to by Mares was Nunez, it is unclear whether he posed a risk because there is no testimony regarding whether he had been restrained in any way, such as by handcuffs. Also, the State did not explain why he was in the room or how he had gotten there—he was originally found in the other bedroom. A search incident to an arrest cannot be expanded in scope by the device of moving the arrestee from place to place and thereby increasing the area within the arrestee's reach. *See United States v. Mason,* 523 F.2d 1122, 1126 (D.C.Cir.1975); 3 LaFave, *supra,* § 6.4(a), at 316. The same rule would also certainly apply to an unarrested occupant, such as Nunez.

(17) Thus, although we defer to the fact finding of the district court in this matter, we cannot sustain a ruling for which supporting facts are absent. The record before us is too sparse to permit a finding that safety concerns arising from the presence of either Defendant or Nunez could justify the search of the paper sack for weapons. We therefore must reverse the district court.

(18) For the above reasons, the denial of Defendant's motion to suppress is reversed. We remand for entry of an order suppressing the marijuana and for further proceedings consistent with this opinion.

(19) **IT IS SO ORDERED.**

DONNELLY and FLORES, JJ., concur.