This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

　　Plaintiff-Appellee,

v.　　　　　　　　　　　　　　　　　　　NO.　28,118

**KENNETH COLEMAN**,

　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Works L.L.C.
John A. McCall
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**ROBLES, Judge.**

Kenneth Coleman (Defendant) appeals his conviction of trafficking cocaine by possession with the intent to distribute, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006). Defendant's claims of error include that (1) he was denied a fair trial due to the makeup of the jury pool; (2) the district court erred in denying a continuance; (3) evidence should have been suppressed due to the State's failure to comply with discovery; (4) it was error to deny his motion to reveal the identity of a confidential informant; (5) the district court erred in denying his motion to suppress evidence due to an illegal search; and (6) the evidence was insufficient to support his conviction. We conclude that Defendant's arguments lack merit and, accordingly, we affirm.

**I.    BACKGROUND**

At Defendant's trial in May 2007, two police officers and one chemist testified for the State. Detective Kevin Wyckoff of the Albuquerque Police Department testified that, on November 9, 2005, he spoke with an informant, who stated that there was a party occurring at a particular motel in Rooms 127 and 410. The detective also testified that Defendant was there, and the police "might want to look at the subject." Further, the informant indicated that there was drug activity at the party. The detective proceeded to the motel the same day with "six or seven" plain-clothed officers to investigate and see if they had the right location and to start surveillance.

Once there, surveillance was established in the parking lot, and the two motel rooms were observed for approximately two hours. During that time, Defendant was observed going between the two rooms "eight or nine times." There were ten separate individuals or groups on ten separate occasions who were also observed parking their vehicles, going inside one of the rooms for "two or three minutes," and then driving away.

Detective Wyckoff testified that, in his training and experience, Defendant's behavior was consistent with drug trafficking. At some point, the decision was made to make contact with Defendant. Defendant was intercepted by the detective and two other officers upon exiting one of the rooms, presumably while he was on his way to the other room. The detective stated that he heard Special Agent King ask Defendant if he could conduct a pat-down and then heard Defendant's response of consent before the detective left him and went upstairs in order to investigate one of the rooms and make contact with the individuals inside. One of the individuals in one of the rooms told the detective that there was a bag of marijuana that belonged to Defendant. Upon learning this, the detective made his way back to Defendant and placed him under arrest. The detective then contacted and requested the presence of Officer Michael Werner, who was wearing a uniform and driving a marked car.

Officer Werner testified that, upon his arrival at the motel, multiple individuals, including Defendant, were in handcuffs, and there were "a lot of activities going on." Eventually, the officer was asked to transport Defendant to the police substation. The officer explained that, although he assumed that Defendant had been searched previously, he always conducted an additional search of suspects before placing them in the back of his police car for transport. The officer's reasoning for conducting an additional search of suspects was three-fold: (1) to prevent dangerous situations with suspects having weapons; (2) to prevent suspects from harming themselves in an attempt to destroy evidence; and (3) as a favor to suspects who may have contraband on them, to prevent them from acquiring another charge. *See* NMSA 1978, § 30-22-14 (1976) ("Bringing contraband into places of imprisonment."). The officer testified that "due to the high increase of illegal narcotics being held within an individual's anus area, I ask if they have any drugs hidden [i]n this area." Defendant told the officer that he did have drugs hidden in that area and, in response, the officer took Defendant into one of the rooms, uncuffed him, and asked him if he would remove the drugs. "[Defendant] simply reached down his pants and removed an item from his anus area, and it fell to the ground." The item removed was a clear plastic bag that was later confirmed to be crack cocaine.

On January 27, 2006, Defendant was charged by grand jury indictment with trafficking cocaine by possession with the intent to distribute, contrary to Section 30-31-20(A)(3), as a result of his November 9, 2005 arrest. At the time of his trial, Defendant had been indicted and had charges pending in six other cases, which are not the focus of this appeal. In a September 2006 memorandum to the district court, the district attorney's office requested a three-month extension pursuant to Rule 5-604 NMRA because two consolidated plea offers were made and rejected in regard to Defendant's seven pending cases, and defense counsel had withdrawn. The extension was granted, and Defendant's new counsel entered his appearance in October 2006. A third plea offer was made and rejected in November, and a six-month extension was granted to May 30, 2007 by our Supreme Court. Defendant's trial on this case began on May 8, 2007. The State filed a notice to enhance the penalty for Defendant's trafficking conviction to a first-degree offense because he was a "second [or] subsequent" time trafficking offender, Section 30-31-20(B)(2), and a fourth-time habitual offender, NMSA 1978, Sections 31-18-19, -20 (1983). Following his conviction, Defendant was sentenced to eighteen years incarceration and two years parole upon release. Additional facts will be developed as needed.

**II.    DISCUSSION**

In turn, we address Defendant's six claimed points of error. Because we conclude that no error occurred, we affirm Defendant's conviction.

**Issue One:  Claims of Error Regarding Jury Selection**

In a single paragraph in his brief, Defendant claims that he was denied a fair trial because (1) the jury pool included one African-American who was excused for cause, and (2) the jury pool did not include a representative sampling of individuals who were his age of thirty-nine years or younger. Defendant admits that this issue was not preserved, and there is no request to review the issue for fundamental error. It appears from the record that the juror in question stated that she used to work in a jail, and she thought she would be biased and unfair toward Defendant. Moreover, it was the defense who asked the juror to be stricken for cause because she "said that she could not be fair, and she said that a couple of times." There is no mention of race that this Court can find during the jury selection process, nor any indication that race was a consideration. Likewise, age of the prospective jurors does not appear to be mentioned. Based on the record, there is no way for this Court to determine the ages of those in the jury pool, or those actually selected for the panel. Because of the lack of development, preservation, and ability of this Court to review the issue, we decline to do so.

**Issue Two:  Motion to Continue**

6

The outcome of a motion to continue is within the discretion of the district court and, accordingly, this Court will not reverse that discretion absent a clear showing of abuse and the burden of demonstrating which lies with the defendant. *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. Beyond demonstrating an abuse of discretion, a defendant must also demonstrate that the abuse caused an injury to the defendant. *Id.*

On March 28, 2007, the district court set this case for trial on May 7, 2007. During the week of the trial in this case, Defendant was also scheduled for trial in another matter stemming from an arrest five months before his arrest in this case. On April 13, 2007, the State filed a motion for a definite trial setting on this case, noting that the rule would run on May 30, and all offers to resolve this case by plea agreement had been rejected. However, on April 26, the State filed a stipulated Rule 5-604 petition to the Supreme Court, noting that Defendant was scheduled for two trials in the same week and, the other case, which was older, would likely go to trial. The Supreme Court denied the motion on May 1, 2007.

On the morning of May 7, 2007, the district court stated that it could not continue the case because the court's docket was filled for the rest of the month. The district court also noted that Defendant's other trial, which was scheduled for the same week, would not have a Rule 5-604 violation until September. The State informed

Defendant and the district court that it only intended to call the two officers who previously had been interviewed by the defense. Additionally, the State noted that Defendant had not filed a motion for reconsideration to the Supreme Court and, if the defense wished to have the current case postponed, the State would stipulate to the motion for a continuance and to an extension under Rule 5-604. When asked by the district court whether the defense was going to petition the Supreme Court for an extension, the defense counsel stated: "No. We are prepared to proceed at this time with what we do have."

On appeal, Defendant argues that the three individuals who testified at trial were only interviewed "a few days before the trial." The other five eyewitness officers who failed to appear for interviews and other civilian witnesses had not been interviewed and/or located. Defendant's essential argument is that his defense counsel was unprepared for trial given the short notice of denial of the Rule 5-604 petition, and defense counsel was preparing for trial on his other case. In retort, the State argues that this issue is not preserved by nature of the fact that Defendant stated that he would not pursue a motion to reconsider with the Supreme Court and that he was "prepared to proceed at this time with what we do have." In the alternative, the State argues that the district court did not abuse its discretion in denying a continuance

because it had no discretion due to the Supreme Court's denial of the Rule 5-604 petition and the district court's full docket.

In reviewing a district court's denial of a defendant's motion to continue, this Court reviews several factors:

> [The] length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing [the] need for the delay, and the prejudice to the movant in denying the motion.

*State v. Stefani*, 2006-NMCA-073, ¶ 9, 139 N.M. 719, 137 P.3d 659 (second alteration in original) (internal quotation marks and citation omitted). To the extent that Defendant argues that this issue was preserved, and the district court still had discretion to continue the trial even though it had a full docket and the rule was set to run within days, we nonetheless concluded there was no abuse of discretion. Before rejecting the State's offer to postpone the case so that a motion for reconsideration could be filed with the Supreme Court, the district court stated: "For purposes of the record, . . . this case has been pending since March 13, 2006. [Defense counsel] entered on this case on October 11, 2006. It has been set for plea and trial in November 6, 2006; January, 10, 2007; March 28, 2007; and then today's date."

Defense counsel confirmed that the State's three witnesses had been interviewed prior to the suppression hearing. On appeal, Defendant claims that Agent

King, who did not show for his pretrial interview because he was transferred to work in Arizona, may have testified that he removed the narcotics from Defendant's person and, therefore, the defense would have been able to attack the credibility of Detective Wyckoff and Officer Werner. Likewise, Defendant claims that the short notice of trial forced him to interview the witnesses just days before the motions hearing and the trial and because no transcript was generated from the interviews, he was unable to impeach witnesses at the suppression hearing. Finally, Defendant states that other civilian witnesses were not located, interviewed, or subpoenaed, and the interviews of the detective and the officer supported the theory that another individual was actually dealing the marijuana.

The record reveals that, during the suppression motion, defense counsel stated that transcripts of the pretrial interviews had not been made. However, defense counsel had heard the tapes and taken notes. Defense counsel argued to the district court that Detective Wyckoff stated in his pretrial interview that Agent King was the individual who removed the drugs from Defendant's person, and Officer Werner's story was that he had obtained the drugs. During cross-examination of the officer in regards to statements the informant had made, defense counsel did attempt to play the tape of the pretrial interview. However, the district court stated that defense counsel had not pointed to any portion of the pretrial interview that was inconsistent with what

10

had already been stated by the detective on the stand. The district court did offer defense counsel an opportunity to listen again to his tape recordings of the detective's interview during a recess to which defense counsel responded that a recess was "[n]ot required" and that he thought he could conduct the cross-examination effectively. Later, the district court did allow defense counsel to play the pretrial interview in the context of impeachment of the detective as to who had removed the drugs from Defendant's person. It would appear from the record that the detective's story was that the agent, while conducting the consent pat-down, observed a part of a plastic bag sticking out of Defendant's waistband "in between the buttocks area." The agent did not remove the bag, but did inform the detective about it. We conclude that the relevant testimony was developed by defense counsel during the suppression motion without transcripts. Likewise, we see no contradiction in the stories told by the detective and the officer that would demonstrate prejudice or implies it was, in fact, the agent that removed the drugs from Defendant's person. *See Salazar*, 2007-NMSC-004, ¶ 10 ("[The d]efendant must establish not only an abuse of discretion, but also that the abuse was to the injury of the defendant." (internal quotation marks and citation omitted)).

In regards to the missing civilian witnesses, Defendant has not cited where this issue was argued to the district court as a reason that a continuance was needed.

Although Defendant did argue that witness interviews of the police officers had not been conducted as a reason to suppress evidence for the State's failure to comply with discovery, this is a separate issue from a motion to continue because civilian testimony was needed to prepare a defense. Defendant argued to the district court that the three officers who did not show for pretrial interviews, including Agent King, should not be allowed to testify at trial. The district court ruled that should either party decide to call any of the officers who did not show for pretrial interviews, they first must be available for a pretrial interview. None of those officers testified. Because this Court is unable to locate where Defendant specifically argued that civilian witness testimony had not been acquired, and a continuance for this reason was needed, we cannot say the district court abused its discretion. *See* Rule 12-213(A)(4) NMRA (stating that briefs submitted to this Court "shall contain a statement of the applicable standard of review, the contentions of the appellant[,] *and a statement explaining how the issue was preserved in the court below*, with citations to authorities, record proper, transcript of proceedings or exhibits relied on") (emphasis added); *State v. Rojo*, 1999-NMSC-001, ¶ 44, 126 N.M. 438, 971 P.2d 829 (filed 1998) (holding that appellate courts will not search the record to find whether an issue was preserved where the defendant did not refer the court to appropriate transcript references).

**Issue Three: Suppression of Evidence for Failure to Comply With Discovery**

This Court defers to the district court's decision to admit or exclude evidence and will not reverse unless there has been an abuse of discretion. *See State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995). Our review of the application of the law to the facts is conducted de novo. *See State v. Attaway*, 117 N.M. 141, 145, 870 P.2d 103, 107 (1994), *modified on other grounds by State v. Lopez*, 2005-NMSC-018, 138 N.M. 9, 116 P.3d 80.

Defendant argues that without the testimony of Agent King or the other witnesses, his defense was impaired, and the district court erred in failing to suppress evidence and dismiss for failure to provide witness interviews. On December 8, 2006, Defendant filed a motion to suppress evidence for failure to comply with discovery. On the morning of May 7, 2007, Defendant filed his second motion to suppress for failure to comply with discovery and stated to the district court that the State had provided pretrial interviews of three witnesses. However, Defendant requested that the case be dismissed for failure to provide witness interviews and, in the alternative, that the testimony of the officers who did not show for pretrial interviews be suppressed. At the motion hearing, the State noted that plea negotiations were ongoing into March 2007 and, when it finally appeared that Defendant would not be entering a plea, it was the State that initiated discussions about witness interviews.

13

Moreover, the State chronicled its efforts to contact the defense in order to schedule witness interviews by producing multiple electronic mail correspondences, which were admitted into evidence. The district court denied Defendant's motion to suppress for failure to comply with discovery but, as pointed out under the previous section, ruled that should either party decide to call any of the officers who did not show for pretrial interviews, they first must be made available for a pretrial interview before their testimony. The only individuals who testified at trial were available for pretrial interviews. As discussed in the previous section, the district court was aware of Defendant's arguments concerning the officers who were not available for interviews. Likewise, the district court heard Defendant's arguments about police officers' contradictions in pretrial interviews and the need for the missing officers' statements. Defendant did not demonstrate to the district court and has not demonstrated to this Court, as explained in the previous section that the missing officers were needed to square an inconsistency, nor that Defendant was prejudiced by their absence. *See State v. Duran*, 107 N.M. 603, 608, 762 P.2d 890, 895 (1988) (stating that it is the defendant's burden to establish prejudice by an error in trial), *superseded by rule as stated in State v. Gutierrez*, 1998-NMCA-172, 126 N.M. 366, 969 P.2d 970. We reiterate that this point was underscored by defense counsel's statement that "[w]e are prepared to proceed at this time with what we do have."

14

Defendant is asking this Court to speculate on the potential of unheard testimony, which is a request we will not do, considering that it is Defendant's burden to demonstrate an abuse of discretion and that such abuse injured Defendant by affecting the ultimate outcome of his trial. *State v. Holly*, 2009-NMSC-004, ¶ 28, 145 N.M. 513, 201 P.3d 844) ("[T]he defendant has the burden to demonstrate prejudice."). On appeal, a defendant cannot complain of an error which has not prejudiced him. We conclude that the district court did not abuse its discretion in denying Defendant's motion.

**Issue Four: Identity of the Confidential Informant**

Under Rule 11-510(A) NMRA, the State has the "privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation." However, if it appears that an informant can "give testimony that is relevant and helpful to the defense," and there is a "reasonable probability" that the informant can give the testimony, and the State continues to elect not to disclose the informant's identity, the district court on motion "shall dismiss the charges to which the testimony would relate." Rule 11-510(C)(2). We review the denial of a motion to reveal the identity of an informant for an abuse of discretion. *Rojo*, 1999-NMSC-001, ¶ 39.

15

It is Defendant's contention that the informant's identity and information was relevant to "whether there was a proper basis for surveilling . . . Defendant." Specifically, Defendant argues that Detective Wyckoff had earlier stated that the informant had merely indicated where Defendant was, but did not indicate whether he was selling drugs. Defendant argues that the detective later changed his story by stating that the informant told him that Defendant was "up to the same old thing." The detective testified that he took the informant's statements to mean "drug activity." Essentially, it is Defendant's assertion that what the informant told the detective was critical to whether "the officers [had] any information to support an investigation." We do not agree.

Detective Wyckoff testified that based on the surveillance observations from the parking lot of Defendant moving from room to room and the short stays of ten separate parties to the same rooms, he suspected that there was drug dealing occurring at the motel. Further, the detective stated that contact was made with Defendant based on his movements and the activity of the other people. This Court is unaware of any requirement that there must be a proper basis for a police officer to sit in a parking lot. To the extent that Defendant advocates the application of the *Aguilar-Spinelli* test to verify the credibility/veracity of the informant and the basis of the informant's knowledge, we note that "[t]he *Aguilar-Spinelli* analysis applies only to *hearsay*

16

contained in an affidavit in support of a search warrant." *State v. Lovato*, 117 N.M. 68, 69, 868 P.2d 1293, 1294 (Ct. App. 1993). No warrant was obtained in this case, and Defendant has failed to show how the informant's identity would be relevant or helpful to his defense.

**Issue Five:  The Search**

"The issue of suppression . . . raises a mixed question of law and fact and our review on appeal is de novo." *State v. Duffy*, 1998-NMSC-014, ¶ 62, 126 N.M. 132, 967 P.2d 807, *modified on other grounds by State v. Gallegos*, 2007-NMSC-007, 141 N.M. 185, 152 P.3d 828. "[T]he State bears the burden of proving facts that justify a warrantless search and seizure." *State v. Martinez*, 1997-NMCA-048, ¶ 9, 123 N.M. 405, 940 P.2d 1200.

At the hearing on the motion to suppress, Detective Wyckoff testified that based on Defendant's actions, the decision was made to make contact with Defendant. The detective conceded that Defendant was detained at that point. Upon learning that the marijuana belonged to Defendant, the decision was made to place him under arrest. Before being transported by Officer Werner, Defendant was asked if he had drugs on him to which Defendant replied that he did and voluntarily removed the drugs. Defendant testified that he never gave consent for a search, and he never voluntarily produced any item from his person. The district court concluded that Defendant's

17

detention was lawful, the officers had reasonable suspicion to stop and detain him, and the information the officers received provided probable cause to arrest Defendant, pursuant to which he voluntarily removed cocaine from his person.

Defendant first contends that Detective Wyckoff's pretrial testimony conflicts with his trial testimony. Essentially, Defendant argues that the detective stated that, during the suppression motion, a pat-down is for any type of evidence, whereas, at trial, the detective stated that a pat-down is for weapons. This argument fails to address how the initial detention, subsequent arrest, or voluntary removal of the narcotics was unlawful.

Defendant next argues that there was no indication that he had a weapon at the time he was searched by Officer Werner. Citing to *State v. Paul T.*, 1999-NMSC-037, ¶¶ 12-14, 128 N.M. 360, 993 P.2d 74, Defendant states that it was error not to suppress the drugs. This has no merit. The officer testified that Defendant voluntarily removed the drugs from his own person after being asked if he had any drugs. However, Defendant was under arrest at this time, and officers have broad leeway to search an individual following an arrest so long as methods are established to ensure the individual's privacy interests and dignity. *State v. Williams*, 2010-NMCA-030, ¶ 9, 148 N.M. 160, 231 P.3d 616, *cert. granted*, ___-NMCERT-___, ___ N.M. ___, ___ P.3d ___ (No. 32,263, Apr. 1, 2010). This Court has previously recognized that

18

even an arrestee still has privacy interests in his person and searches must be justified under the circumstances. *Id.* Unlike this Court's conclusion in *Williams*, here, the officer testified (1) his reasons for searching Defendant, (2) the area searched in relation to the information before the officer, (3) the location of the search, and (4) the manner in which the search occurred. *See id*. ¶¶ 13, 16 (analyzing the reasonableness of intimate searches incident to arrest by weighing the searches' justification, scope, manner, and location). To the extent that Defendant challenges the justification for the search by stating that there was no indication that he had any weapons, we conclude that the officer's testimony specifically outlined three reasons why he searched Defendant. *See, e.g.*, *Martinez*, 1997-NMCA-048, ¶ 7 ("Even a handcuffed arrestee may be foolhardy enough to try to seize a nearby firearm."). Moreover, we conclude that the totality of circumstances surrounding this particular search were reasonable and, on balance, Defendant's privacy interests were respected while the State's interests were exercised.

Defendant's argument based on *Paul T.* is likewise unconvincing. *Paul T.* involved a juvenile curfew violator whose pockets were searched pursuant to being placed in custody prior to being placed in a police car for transport. 1999-NMSC-037, ¶¶ 5-6. Here, Defendant was not a juvenile, and the search was while he was under

19

full arrest before he was to be taken to a police substation and not merely after he was taken into custody and was going to be driven home.

Finally, it is argued that the State failed to produce a consent to search form, even though both Detective Wyckoff and Officer Werner both alleged that Defendant had freely consented to being searched. This Court is aware of no rule that requires the State to produce a consent to search form in order for police officers to be allowed to search pursuant to an arrest. Defendant cites no law to help us in this matter, and we therefore conclude that where no citation is made, a diligent search by counsel was unable to locate law that supports this proposition. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

**Issue Six: Sufficiency of the Evidence**

Finally, Defendant claims that the evidence produced at trial was insufficient to support his conviction.

> Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt.

*State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citations omitted). On appeal, the appellate court views the evidence in the light most favorable to the

verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict. *State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994).

In order to be convicted, the State was required to prove beyond a reasonable doubt that (1) Defendant had cocaine in his possession; (2) Defendant knew it was cocaine or believed that it was cocaine; (3) Defendant intended to transfer the cocaine to another individual; and (4) this occurred in New Mexico on or about November 9, 2005. *See* § 30-31-20(A)(3).

Defendant notes that the evidence produced at trial created discrepancies regarding the amount of crack cocaine collected. Detective Wyckoff identified the quantity as .16 ounces, while the State's chemist identified the amount he tested as being 1.37 grams. However, the detective testified that he could not convert grams to ounces, there was simply "more than four crack rocks" in the bag, and it "was more than personal use." The State's chemist did not contradict this testimony. Regardless, it is for the fact finder to weigh the testimony and, under our standard of review, the question is simply whether evidence was presented that would support a conviction. *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776 ("[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; . . . all disputed facts are resolved in favor of the successful

21

party[; and] the appellate court will not weigh the evidence[.]" (internal quotation marks and citation omitted)).

Defendant's final argument is that no testimony developed the chain of custody of the narcotics, and it was unknown "whether the cocaine presented in evidence was the same cocaine allegedly retrieved from . . . Defendant or whether anyone could connect Defendant's alleged cocaine to the alleged search of . . . Defendant's person." The State argues that the admission of evidence is within the discretion of the district court, and the crack cocaine was admitted into evidence without objection. We view the State's argument as acknowledging that claims of insufficient evidence to support a conviction may be made for the first time on appeal, *State v. Stein*, 1999-NMCA-065, ¶ 9, 127 N.M. 362, 981 P.2d 295, but Defendant should not be allowed to collaterally attack the discretion of the district court in admitting evidence when no objection was made below, and no ruling was invoked. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (preserving an argument for appeal requires a timely objection that specifically notifies the district court of the error claimed and invokes a ruling thereon). We conclude that the evidence presented was sufficient for a reasonable jury to conclude that the crack cocaine in evidence was the same crack cocaine that Defendant had on his person on November 9, 2005.

The record shows that the State's chemist testified first, and the crack cocaine was admitted into evidence without objection. Detective Wyckoff testified that, as the case agent, he learned that a bag of crack cocaine was recovered from Defendant. The detective stated that he field-tested and tagged the crack cocaine into evidence, and the bag was surrendered by Defendant to Officer Werner. The detective also testified he saw the bag removed from Defendant's anus area, and the bag in evidence was the same "[t]o the best of my recollection." "Questions concerning a possible gap in the chain of custody affects the weight of the evidence, not its admissibility." *State v. Peters*, 1997-NMCA-084, ¶ 26, 123 N.M. 667, 944 P.2d 896. We conclude that the jury heard sufficient testimony, such that they could reasonably infer that the crack cocaine removed from Defendant was the same the detective tagged into evidence and the State's chemist tested. The crack cocaine was admitted into evidence without objection at trial.

**III.    CONCLUSION**

We affirm Defendant's conviction for the above reasons.

**IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

23

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**CELIA FOY CASTILLO, Judge**